Thomas Charles **BAUGHMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 71–1005.

United States Court of Appeals, Eighth Circuit.

Nov. 19, 1971.

---

Bernard P. Becker, Legal Aid Society of Minneapolis, Minneapolis, Minn., for appellant.

Harold J. Pickerstein, Atty., Crim. Div., U. S. Dept. of Justice, Washington, D. C., Robert G. Renner, U. S. Atty., D. Minnesota, Will Wilson, Asst. Atty. Gen., for appellee.

Before MATTHES, Chief Judge, and BRIGHT and STEPHENSON, Circuit Judges.

MATTHES, Chief Judge.

This proceeding under Title 28 U.S.C. § 2255 is focused upon the duration of governmental custody of persons convicted of criminal offenses who are committed as addicts pursuant to Title II of the Narcotic Addict Rehabilitation Act (NARA), 18 U.S.C. § 4251 et seq.

Title 18 U.S.C. § 4253(a) provides in pertinent part:

" * * * Such commitment shall be for an indeterminate period of time not to exceed ten years, but in no event shall it exceed the maximum sentence that could otherwise have been imposed."

The appellant interprets the foregoing to mean that the court is vested with discretion to commit the offender for any period not to exceed ten years or the maximum sentence for the violated criminal law. Conversely, the Government advocates that § 4253 requires commitment for an indeterminate sentence, with custody to terminate upon either discharge of the addict as cured or the expiration of a period equal to the lesser of ten years or the maximum sentence otherwise allowable. The district court adopted the Government's theory and in due course the case has reached this court. We are in accord with Judge Neville's conclusion and accordingly affirm.

We first engage in a resume of the proceedings antedating the appeal.

On December 7, 1967, appellant was convicted upon his guilty plea of a violation of 26 U.S.C. § 4704(a), the sale of narcotics not in or from the original container. Upon appellant's request and after appropriate findings that he was an eligible offender likely to be rehabilitated, the district court committed appellant pursuant to NARA. In the sentencing proceedings, Judge Neville observed that were he sentencing the appellant to incarceration in a penal institution for the offense committed, the sentence would be three and one-half years. However, he construed § 4253 to require commitment for treatment to be for the lesser of the maximum allowable sentence or ten years. Since the maximum sentence under 26 U.S.C. § 4704 was ten years, Judge Neville felt constrained to impose a ten year indeter-

minate sentence. United States v. Baughman, No. 3–67 Cr. 63 (D.Minn. April 25, 1968).

Under date of June 20, 1968, appellant wrote to the district judge requesting that the sentence be clarified. The court treated the letter as a timely motion under Rule 35 for reduction of sentence and on July 3, 1968, denied the motion reiterating the court's construction of § 4253(a). United States v. Baughman, 286 F.Supp. 269 (D.Minn.1968).

Thereafter appellant moved the court pursuant to 28 U.S.C. § 2255 to vacate the ten year sentence and to impose the three and one-half year sentence originally contemplated, the substance of the motion being that Judge Neville had construed the statute erroneously in holding the ten year period mandatory. This motion was denied Baughman v. United States, No. 3–67 Cr. 63 (D.Minn. Sept. 29, 1970).

We now delve into the various facets and provisions of the Narcotics Act of 1966 (NARA). Prior thereto the federal efforts against drug addiction consisted of stringent mandatory penalties for trafficking in drugs and medical treatment for volunteering addicts. However, the mounting evidence from medical experts indicated that since there was no authority to keep addicts in the hospitals until physically cured or under closely supervised post-hospital care until psychologically cured, 90 per cent of the addicts leaving federal hospitals were returning to a habit of anesthesization financed by crime.[1] Consequently, the Congress enacted legislation proposed by the executive branch which wrote into federal law the civil commitment provisions then being initiated in New York and California.

The resulting Narcotic Addict Rehabilitation Act of 1966 was a comprehensive approach to the problem of narcotics addiction.[2] Title III provides for the civil commitment by federal court of any eligible addict.[3] Title I provides for commitment of any eligible addict indicted for a federal crime, the criminal proceeding meanwhile being suspended with the possibility of dismissal if the treatment is successful.[4] In Title II, 18 U.S.C. § 4251(f), defines an "eligible offender" as any individual who is con-

1. Hearings on H.R. 9051, 9159, 9167, 9249, 9886, 10762, 11409 Before Subcomm. No. 2 of the House Comm. on the Judiciary, 89th Cong., 1st and 2d Sess. 80 (1966).

2. The Act as passed had six titles. The titles pertinent here are I, II, and III, which are discussed infra. Title IV deals with allocations for construction of treatment facilities, Title V with criminal penalties, and Title VII with miscellaneous provisions.

3. Title III of the Act (42 U.S.C. § 3411 et seq.) provides that any addict or anyone related to the addict may request the appropriate U. S. Attorney to initiate civil commitment proceedings. If after an examination by two appointed doctors and after a hearing with the addict's attorney and doctor present the district court finds the person to be an addict likely to be rehabilitated, the court may commit the addict to the custody of the Surgeon General "for a period of six months" hospitalization, or less if the Surgeon releases him earlier. 42 U.S.C. § 3416. Upon

the addict's release from confinement in the hospital, and after another hearing, the court may place him in the Surgeon's custody for supervised aftercare in the community "for the three-year period immediately following the patient's release * * *." 42 U.S.C. § 3417(a). If during those three years the patient returns to the use of narcotics or otherwise violates the conditions of his release, the court may recommit him.

4. Title I of the Act (28 U.S.C. § 2901 et seq.) provides that an addict otherwise eligible who is indicted for a federal crime with certain exceptions enumerated in § 2901(g), may be committed to the custody of the Surgeon General for treatment that "may last for thirty-six months * * *." 28 U.S.C. § 2902(a). Meanwhile, the criminal charge is held in abeyance and is dismissed "if the Surgeon General certifies to the court that the individual has successfully completed the treatment program." 28 U. S.C. § 2902(c). If treatment is unsuccessful, the criminal proceeding is resumed.

victed of an offense against the United States, but not including certain enumerated offenders not material here. Sec. 4253 also provides that eligible offenders, which includes addicts treated unsuccessfully under Title I and then convicted,[5] may in lieu of ordinary penal sentencing be committed to the custody of the Attorney General for treatment of his addiction.

We turn then to that part of § 4253 above set out, around which this controversy centers. Apparently the issue before us is one of first impression at the appellate level. Our attention has not been directed to, nor has our research revealed, any reported opinion on the question other than Judge Neville's decision here appealed. There are, however, divergent views on this matter within the federal judiciary. Judge Carter of the Ninth Circuit Court of Appeals and the late Judge Kunzel of the Southern District of California have expressed agreement with appellee's interpretation, 44 F.R.D. 197, 221 (1968), while appellant has appended to his brief correspondence indicating that District Court Judges Clarie of Connecticut, Cannella of New York, and Cancio of Puerto Rico set the duration of custody under § 4253 at their discretion. One such short-term commitment was involved in United States v. Buie, 407 F. 2d 905 (2d Cir.), aff'd sub nom. Minor v. United States, 396 U.S. 87, 89 S.Ct. 284, 24 L.Ed.2d 283 (1969), though the duration of commitment there was not controverted.

"Indeterminate sentences have long been held sentences for the maximum term for which the defendant might be imprisoned." United States ex rel. Pala-

dino v. Commissioner of Immigration, 43 F.2d 821, 822 (2d Cir. 1930). See, e. g., Sturm v. California Adult Authority, 395 F.2d 446 (9th Cir. 1967), cert. den. 395 U.S. 947, 89 S.Ct. 2021, 23 L.Ed.2d 466 (1969); Petsche v. Clingan, 273 F.2d 688 (10th Cir. 1960); Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, 187, cert. den. 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938). We have read the entire legislative history of this Act[6] and have found no reason to believe that Congress contemplated a construction of the term "indeterminate" other than that ordinarily understood by the courts. It is true that the legislative controversies centered on other portions of the bills and that consequently the interpretation problem at issue here was never directly discussed in published hearings or debates; but the unanimity of understanding reflected by the total absence of inquiries as to definitions could hardly evince a departure from a well-settled interpretation. Moreover, several facets of the legislative history of NARA strongly infer that Judge Neville correctly assessed the intent of Congress.

The most revealing portion of the Act's history is the origin of the statutory design, for there can be no doubt that when the executive department transposed the recommendation of a presidential advisory commission into legislation, it looked, as had the Commission, to the laws of California and New York as models. See, Final Report of the President's Advisory Commission on Narcotic and Drug Abuse, 70–73 (1963); Remarks of Rep. Smith of California, 112 Cong.Rec. 11220 (1966); H.R.Rep. No. 1486, 89th Cong. 2nd Sess. 51 (1966). The history indicates that it is hardly

---

5. See H.R.Rep.No.1486, 89th Cong., 2nd Sess. 11 (1966), U.S.Code Cong. & Admin.News 1966, p. 4245.

6. The documents composing the legislative history of the Act which we have examined include: Final Report of the President's Advisory Commission on Narcotic

and Drug Abuse (1963); Hearings, *supra*, n. 1; H.R.Rep.No.1486, *supra*, n. 4; S. Rep.No.1667, 89th Cong., 2nd Sess. (1966); H.R.Rep.No.2316, 89th Cong. 2nd Sess. (1966) (the Conference Report); 112 Cong.Rec. 11793–828, 11887–906, 25414–34, 26212, 26487–88, 27616–21, 28542–50 (1966).

accidental that Title I incorporates the three-year pre-trial commitment procedure of New York [7] while Title II contains the 10-year post-conviction procedure of California.[8] It is therefore significant that the unambiguous language of the California law clearly provides the commitment term which Judge Neville construed § 4253(a) to require.

Rather than using the word "indeterminate" which is at the heart of the controversy here, the California statute simply spells out the procedure. It provides in § 3051 that upon the requisite findings of fact, the judge "shall make an order committing such person to the custody of the Director of Corrections for confinement in the facility *until such time as he is discharged pursuant to Article 5 of this chapter* * * * *" (emphasis supplied). Article 5 in turn provides two alternate methods of discharge: (1) when the patient is deemed cured, or (2), if not cured, "the person must be returned to the court and discharged from the program on or before the expiration of 10 years from the date of the original commitment." [9] Cal. Welfare & Inst'ns Code, § 3201 (West 1966). Clearly, then, under the California program the judge has no discretion to vary the duration of custody, that decision having been left to the medical authorities within statutory parameters.

Further support for the correctness of Judge Neville's reading of the statute is the concern expressed by proponents of the bill that it provide lengthy and compulsory supervised aftercare. This concern is evident from a reading of remarks made in support of the bill, a comparison of the proposal enacted with those closely considered but rejected, and close scrutiny of the approach ultimately adopted.

When the Senate first acted to provide for the civil commitment of addicted criminal offenders, it passed the contents of S. 2191 in substitution for the administration's proposed bill, H.R. 9167.[10] S. 2191 came to the Senate floor providing that a patient conditionally released for post-hospitalization care after having been recommitted once for returning to the use of narcotics would no longer be eligible for medical commitment if he again returned to drugs. Senator Dodd, the chairman of the subcommittee with jurisdiction over these bills, objected to such a limitation as being medically unsound, saying that "testimony before our subcommittee from a host of medical sources proved that narcotic addiction must be viewed as a chronic condition and that relapse to drug use on two or even more occasions cannot be considered as failure to profit from treatment." 112 Cong.Rec. 25431 (1966). Immediately thereafter, Senator Dodd's desire to remove any limitation on repeated institutionalization was incorporated into S. 2191. Similarly, the House committee said its bill recognized that the "fact that an individual was unsuccessful in a course of treatment should not be taken as a conclusive indication of subsequent failure." H.R.Rep. No. 1486, *supra*, at 11, U.S.Code Cong. & Admin.News 1966, p. 4252.

Likewise, the testimony that 90 per cent of the voluntarily committed pa-

7. N.Y. Mental Hygiene Law §§ 200–212 as amended (McKinney's Consol.Laws, c. 27, Supp.1966).

8. Cal.Welfare & Inst'ns Code, §§ 3000–3305 (West 1966).

9. The original commitment in California expires after 7 years, at which time the court may order discharge or a three-year extension of the commitment. Cal. Welfare & Inst'ns Code, § 3201 (West 1966).

10. H.R. 9167 as originally drafted was the administration proposal. After it passed the House, the Senate substituted the contents of S. 2191 for it and passed the amended version. The Committee on Conference restored the House version of 9167 and added the provisions of S. 2191 concerning civil commitment without a criminal offense and capital outlays for construction, as well as making some minor amendments not here pertinent. This version then passed both Houses. See footnote 6, *supra*.

tients were returning to drugs was repeatedly cited as support for the unanimous medical opinion that the psychological problems underlying addiction cannot be cured without lengthy, compulsory aftercare. The House Committee concluded that

"[t]here must be authority to require the addict to continue under treatment after his release from the institution. This legislation provides for just such firm control. * * * Further, the bill insures that the supervisory authority will exercise its control over the addicted individual for a sufficient period of time to give reasonable hope for his true rehabilitation." H.R. Rep. No. 1486, *supra*, at 14, U.S.Code Cong. & Admin.News 1966, p. 4255.

▮ Appellant's contention that short term commitments were contemplated by Congress when NARA was enacted is simply inconsistent with the clear intent of Congress to provide effective and, where necessary, lengthy control over addicts released from hospitalization.[11] The Congressional view seems to have been that such patients when conditionally released are just then entering the most difficult part of their treatment. The language finally adopted thus was considered necessary to give

"correctional and medical authorities a desirable flexibility in treating in-

dividual addicts * * * [and] a lengthy period of sentence for those recalcitrant offenders who do not respond to treatment." H.R.Rep. No. 1486, *supra*, at 12, U.S.Code Cong. & Admin.News 1966, p. 4252.

▮▮ These passages from the committee report can only infer that discretion to terminate custody before the expiration of the statutory period rests solely in the medical authorities. Indeed, since the only statutorily specified minimum term is the six months' hospitalization, appellant's interpretation would allow a judicially imposed term of six months to thwart the Congressional intention to provide for aftercare. We do not think that Congress intended to allow such a result. Even were we to assume such sentences improbable, appellant's reading of the Act would require that the medical examiner's recommendation to the judge be a pronostication of the time necessary to rehabilitate each addict, a feat clearly deemed impossible in the testimony before Congress and thus unlikely to have been contemplated by the proponents of the enacted procedure. In any event, had Congress intended to allow varying periods at the judge's discretion, it surely would have provided a minimum aftercare period as it did in Titles I and III.[12]

---

11. Appellant also contends that because commitment under Titles I and III are for 36 and 42 months, respectively, Congress must not have intended that commitment under Title II automatically be for 10 years absent earlier release. This contention overlooks the facts that a patient not cured after 3 years treatment under Title I may, upon conviction, then be recommitted under Title II for another 7 years for a total commitment of 10 years; that a person may be committed three times under Title III for a total treatment of approximately 10 years; and that under any of these titles the patient may be discharged when the medical authorities deem the treatment to have been successful.

12. Appellant also contends that the provision in 18 U.S.C. § 4251(f) (5) making an addict ineligible for further treatment after thrice having been committed militates against Judge Neville's conclusion. He says Congress could not have contemplated 30 years of treatment and thus must have intended to allow the judge to set periods of commitment shorter than ten years. This contention overlooks the fact that § 4251(f) (5) includes the shorter commitments under Titles I and III and under state laws and that patients may be discharged as cured before their period expires under any of these titles. Thus a person may have been twice committed but only have been in custody a relatively short period of time. Furthermore, to be eligible for commitment, the judge must have found the addict to be "likely to be rehabilitated." A person treated under

That Congress intended the duration of commitment to be a medical, rather than a judicial, decision is also evidenced by the rejection of H.R. 9051. That bill provided the scheme which appellant contends H.R. 9167 contains: the trial judge simply would have passed sentence on the convicted addict in the usual manner and then ordered his confinement in a hospital rather than a penal facility. The rejection of that scheme and the acceptance of the one drafted by officials looking to the procedure adopted in California similarly infers a decision not to create judicial discretion as to the duration of commitment. Indeed, S. 2191, *supra*, and Title III of the ultimate Act, evince the congressional understanding of the lack of judicial discretion as to the duration of custody since both provide that the commitment to aftercare supervision shall be for "*the* three-year period" following confinement. 42 U.S. C. § 3417(a); S.Rep. No. 1667, 89th Cong., 2nd Sess., 6 (1966) (§ 404(a)) (emphasis added).

■ We are convinced by the foregoing that in following the California example of adopting a medical approach to the treatment of addiction that would insure lengthy aftercare, Congress intended the trial judge to have no discretion in establishing the duration of treatment. We are thus constrained to hold that commitment under 18 U.S.C. § 4253 is for an indefinite period of time, with the patient to be discharged from custody by the incarcerating authorities at the earlier of either a determination that the treatment has been successful, or the expiration of ten years or a period of time equal to the maximum sentence allowable under the law violated.[13] Accordingly, we affirm.

previous commitments for a long period of time would be eligible if, but only if, the medical authorities suggested it was warranted.

13. Since we were informed at oral argument that appellant has been conditionally released for aftercare, the actual import of this holding for him relates to the length of the period during which he is subject to control by the parole board and the possibility of rehospitalization upon readdiction.