**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Francisco MUNOZ–CERNA,**
**Defendant–Appellant.**

**No. 94–1202.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 16, 1994.

Decided Feb. 7, 1995.

Stephen P. Sinnott, Asst. U.S. Atty., James Shapiro (argued), Office of U.S. Atty., Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Stephen D. Berman, Arthur A. Liberty, II (argued), Azulay & Azulay, Chicago, IL, for defendant-appellant.

Before CUMMINGS, CUDAHY and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Francisco Munoz–Cerna was convicted of illegally entering the United States after having been previously arrested and deported. *See* 8 U.S.C. § 1326(b). Relying on U.S.S.G. § 2L1.2(b)(2), the district court enhanced the applicable guideline range by 16 levels and imposed a sentence of five years of imprisonment. In this appeal, Mr. Munoz–Cerna challenges the lawfulness of that sentence. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

I

BACKGROUND

A. *Facts*

Although he has lived in Chicago almost all his life, Mr. Munoz–Cerna is a Mexican citizen. On July 30, 1987, he shot a man during the course of an attempted robbery. After his apprehension, he pled guilty, on March 21, 1990, to attempted armed robbery. The state court imposed a six-year sentence for the offense. On January 13, 1993, Mr. Munoz–Cerna was paroled; two weeks later, he was deported to Mexico. Soon afterward, he returned to the United States. On May 25,

1993, Chicago law enforcement officers stopped him for a traffic violation. Mr. Munoz–Cerna was taken into custody, and it was discovered that he had been previously deported.

On June 23, 1993, a special grand jury indicted Mr. Munoz–Cerna for illegally reentering the United States after having been previously convicted and deported, in violation of 8 U.S.C. § 1326.[1] At the arraignment on June 28, 1993, the government filed a Notice of Enhancement of Sentence under 8 U.S.C. § 1326(b)(2) for a 15–year maximum term of imprisonment on the ground that Mr. Munoz–Cerna's previous 1990 felony conviction for attempted armed robbery was classified as an "aggravated felony." On August 19, 1993, Mr. Munoz–Cerna pled guilty to the indictment. There was no plea agreement.

## B. District Court Proceedings

The Pre–Sentence Investigation Report recommended that Mr. Munoz–Cerna's base offense level of 8 be enhanced 16 levels under the "specific offense characteristics" listed under U.S.S.G. § 2L1.2(b).[2] This section provides this enhancement for any "defendant previously ... deported after a conviction for an aggravated felony." U.S.S.G. § 2L1.2(b)(2).

The government then filed an Amended Notice of Enhancement of Mr. Munoz–Cerna's sentence under 8 U.S.C. § 1326(b)(1). In this document, and later in the actual sentencing proceeding, the government conceded that the statutory maximum term of imprisonment for Mr. Munoz–Cerna was five years. The state felony conviction for attempted armed robbery could not be considered an "aggravated felony" under the terms of the statute; only felonies committed after the effective date of the amendment, November 29, 1990, could be counted.[3] Mr. Munoz–Cerna committed the felony in 1987.

In sentencing Mr. Munoz–Cerna on January 19, 1994, the district court accepted the concession of the government and determined that the maximum term of imprisonment allowed under 8 U.S.C. § 1326(b) was five years. The court then determined that this maximum sentence was permissible in this case because, although the predicate felony could not be considered "aggravated" for purposes of the statutory provision permitting a fifteen-year sentence, the sentencing

---

1.  **§ 1326. Reentry of deported alien; criminal penalties for reentry of certain deported aliens**
    (a) Subject to subsection (b) of this section, any alien who—
      (1) has been arrested and deported or excluded and deported, and thereafter
      (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
    shall be fined under Title 18, or imprisoned not more than 2 years, or both.
    (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—
      (1) whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 5 years, or both; or
      (2) whose deportation was subsequent to a conviction for commission of an aggravated

    felony, such alien shall be fined under such Title, imprisoned not more than 15 years, or both.

2.  **§ 2L1.2. _Unlawfully Entering or Remaining in the United States_**
    (a) Base Offense Level: **8**
    (b) Specific Offense Characteristics
    If more than one applies, use the greater:
      (1) If the defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by **4** levels.
      (2) If the defendant previously was deported after a conviction for an aggravated felony, increase by **16** levels.

3.  The government notes that its concession is compatible with the holding of the Court of Appeals for the Fourth Circuit in _De Osorio v. INS_, 10 F.3d 1034, 1040 (4th Cir.1993). The First Circuit has held that the Congress intended for section 1326(b)(2), as it incorporates section 1101(a)(43), to apply retroactively to an alien who was convicted and deported prior to the Anti–Drug Abuse Act amendments. _See United States v. Troncoso_, 23 F.3d 612, 614–15 (1st Cir.1994). The government has not asked that we consider the issue.

guideline provisions of § 2L1.2(b)(2) provided an independent basis for a five-year sentence. The district court then determined that Mr. Munoz–Cerna's prior conviction did constitute an "aggravated felony" under the definition found in the Guidelines, and that the guideline provision was not dependent on the effective date of the statutory amendment.

## II

## DISCUSSION

### 1.

█ We are asked to construe the language of a statute and a sentencing guideline. These are questions of law and, consequently, our review is de novo. *United States v. Young,* 34 F.3d 500, 504 (7th Cir. 1994). Because the sentence at issue in this case requires an understanding of the relationship between a statutory provision and a guideline provision, we begin with an analysis of each.

### (1) The Statute: 8 U.S.C. § 1326

Congress enacted 8 U.S.C. § 1326(b) in 1988 to increase significantly the criminal penalty for the reentry of an alien to the United States who was previously deported following a felony conviction. Pub.L. 100–690, Title VII, § 7345, 102 Stat. 4471; *see United States v. Maul–Valverde,* 10 F.3d 544, 545 (8th Cir.1993). The new subsection provides maximum penalties of five years in prison if the deportation followed commission of a felony. 8 U.S.C. § 1326(b)(1). If the deportation followed an aggravated felony, a maximum sentence of fifteen years can be imposed. 8 U.S.C. § 1326(b)(2).

At the time of the enactment of § 1326(b)(2), the term "aggravated felony," defined in 8 U.S.C. § 1101(a)(43), did not include the offense of attempted armed robbery. Subsequently, the Congress amended the definition of "aggravated felony" in the Immigration Act of 1990 ("IMMACT"), Pub.L. No. 101–649, § 501(a), 104 Stat. 5048, 5048 (1990). The new definition included attempted armed robbery within the definition of "aggravated felony." [4] By amending this definition, Congress broadened significantly the scope of § 1326(b)(2).

However, the effective date of the 1990 IMMACT amendment provides that the amended definition shall apply only to "offenses committed on or after the date of the enactment of this Act ... [Nov. 29, 1990]." IMMACT, § 501(b). The government concedes that, as a result of this legislative directive with respect to the effective date, a crime can be classified as an "aggravated felony" only if committed on or after November 29, 1990. *See De Osorio v. INS,* 10 F.3d 1034, 1040 (4th Cir.1993).

### (2) The Sentencing Guideline: U.S.S.G. § 2L1.2

Subsequent to the adoption of 8 U.S.C. § 1326(b) in 1988, the Sentencing Commission adopted corresponding amendments to U.S.S.G. § 2L1.2(b)—the applicable guideline section for a violation of 8 U.S.C. § 1326 U.S.S.G. § 2L1.2, comment. (statutory provisions); U.S.S.G.App. A at 370. Subsection (b)(1) first appeared in amendment 193 to the Guidelines, becoming effective November 1, 1989. U.S.S.G. § 2L1.2(b), comment. (hist. note). At the time of the amendment, the following application note was included:

3. A 4–level increase is provided under subsection (b)(1) in the case of a defendant who was previously deported after sustaining a conviction for a felony, other than a felony involving a violation of the immigration laws. In the case of a defendant previously deported after sustaining a con-

---

4. The amended definition provides that the term "aggravated felony" means:

any murder ... or any crime of violence (as defined in section 16 of Title 18, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years, or any attempt or conspiracy to commit any such act.

8 U.S.C. § 1101(a)(43).

A "crime of violence," for purposes of the definition of "aggravated felony," is prescribed in 18 U.S.C. § 16, which provides in relevant part:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another.

viction for an aggravated felony ... an upward departure may be warranted.

In 1991, § 2L1.2(b) was further amended. The new section retained the four-level enhancement if the alien's deportation followed a felony conviction (§ 2L1.2(b)(1)), and added a sixteen-level enhancement if the deportation followed an aggravated felony conviction (§ 2L1.2(b)(2)). The commentary to this amendment states that its purpose was to eliminate the need to request an upward departure for a prior aggravated felony because the Commission had determined that a 16-level increase was "appropriate to reflect the serious nature of these offenses." The guideline employs a definition of "aggravated felony" which is almost identical to that found in 8 U.S.C. § 1101(a)(43). *See* U.S.S.G. § 2L1.2, comment. (n.7).

2.

█ In this appeal, Mr. Munoz–Cerna submits that the district court erred in applying the enhancement required by the guidelines when the aggravated felony was committed prior to deportation. In essence, he argues that it is error to apply this guideline enhancement to him because the statutory enhancement permitted by the 1990 IMMACT is not applicable. Failure on the part of the Sentencing Commission to follow the effective date employed by the Congress when it enacted IMMACT is, in his view, unreasonable and violates the congressional intent. He submits that we must read the statutory provision in IMMACT and the guideline provision as a totality. The statutory provision describes the proscribed act and the guideline simply sets the sentence for that proscribed act. Any other interpretation, he further submits, is not only contrary to the statutory intent, but creates an absurd result that violates the most basic rules of statutory construction. In the alternative, Mr. Munoz–Cerna asks that we regard the Commission's failure to employ the same effective date adopted by the Congress as a failure on the part of the Commission to follow the manifest congressional intent with respect to the treatment of aggravated felonies. He reads IMMACT as a statutory directive that aggravated felonies be treated as the Congress elected to treat them in IMMACT and suggests that the Commission erred by "omitting" the same effective date as IMMACT.

In evaluating Mr. Munoz–Cerna's position, we note at the outset that we have no quarrel with the overarching principle that he articulates. We have acknowledged that, although Congress has chosen to address sentencing policy issues through both statutes and sentencing guidelines, we ought not presume lightly that it intended that these two vehicles of its legislative will be at odds with each other.[5] Our acceptance of this basic proposition does not, however, necessarily require that we accept the result that he suggests follows inexorably from this proposition.

Mr. Munoz–Cerna was indicted for having violated 8 U.S.C. § 1326 on the ground that he was an alien "who had been previously arrested and then deported from the United States" and who now was again "present in the United States without previously obtaining the express consent of the United States Attorney General for reapplication ... for admission to the United States." Indictment R.7. The indictment makes no reference to the former arrest as a felony.[6] In sentencing

5. With respect to mandatory minimum sentences, for example, we have explicitly noted that Congress did not intend to employ through the mandatory minimum sentence a scheme "so completely at odds with the measured approach clearly required by the Guidelines." *United States v. Young,* 997 F.2d 1204, 1210 (7th Cir. 1993); *see also United States v. Martinez,* 987 F.2d 920, 926 (2d Cir.1993) (same); *cf. United States v. Edwards,* 945 F.2d 1387, 1396 (7th Cir.1991) (explaining that "the limiting principle [of conspiracy liability] underlying conspiracy law and the Guidelines is essentially one and the same"), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 308 (1992).

6. As the government notes, the Ninth Circuit has held that the subsections of § 1326 are separate crimes, not sentencing enhancements. *See United States v. Campos–Martinez,* 976 F.2d 589 (9th Cir.1992). We believe that the better view is that the subsections are sentence enhancements. This is the view taken by the other circuits that have addressed the issue. *See United States v. Crawford,* 18 F.3d 1173, 1176–78 (4th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 171, 130 L.Ed.2d 107 (1994); *United States v. Forbes,* 16 F.3d 1294, 1298–1300 (1st Cir.1994); *United States v. Vasquez–Olvera,* 999 F.2d 943, 945 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 889, 127 L.Ed.2d 82 (1994).

the defendant, it was the duty of the district court to follow the provisions of the applicable guideline, U.S.S.G. § 2L1.2(b)(2) (effective Nov. 1993). As a general rule, the Guidelines direct a court to consider the "specific offense characteristics" in determining the appropriate sentencing level. U.S.S.G. § 1B1.2, comment. (n.2). More specifically, § 2L1.2(b) is captioned "Specific Offense Characteristics," and provides that "[i]f more than one applies· [referring to the two subsections], use the greater." There is no indication that the Commission intended that these offense characteristics be read as directly correlated to the various subsections of § 1326. We agree with the Ninth and Tenth Circuits that this specific structure and language require consideration of the applicability of these two specific offense characteristics of U.S.S.G. § 2L1.2(b) regardless of the statutory subsection applicable to the defendant. *See United States v. Frias–Trujillo*, 9 F.3d 875, 877 (10th Cir.1993); *United States v. Arias–Granados*, 941 F.2d 996, 996 (9th Cir.1991).[7] In *Frias–Trujillo*, the Tenth Circuit summarized, as we have earlier in this opinion, the evolution of the specific offense characteristics. Like the Tenth Circuit, we believe that this evolution demonstrates that the guideline was intended to be applied without reference to the specific subsections of the underlying statute. We also note that the commentary and the statutory appendix pertaining to the guideline are not arranged to address individually each of these two subsections of § 2L1.2(b).

There is other evidence that the Sentencing Commission did not intend that there be a symmetrical relationship between the provisions of IMMACT and the provisions of the guideline. As we have noted previously, the Congress established an effective date of November 29, 1990 for the aggravated felony provision contained in IMMACT; the Sentencing Commission, on the other hand, established an effective date of November 1, 1991 for the guideline provision.[8]

---

**7.** The Tenth Circuit, in *United States v. Frias–Trujillo*, 9 F.3d 875 (10th Cir.1993), considered almost the identical issue. In *Frias–Trujillo*, the defendant had been convicted of burglary in May of 1989. He was sentenced to 25 years of imprisonment, and he was subsequently deported in June 1991. The defendant later reentered the United States and was arrested for burglary in November of 1991. Mr. Frias–Trujillo was charged and pled guilty to illegally reentering the country after deportation "[i]n violation of 8 U.S.C. § 1326 and 8 U.S.C. § 1326(b)." *Id.* at 876.

Because the indictment failed to specify which subsection of § 1326(b) Frias–Trujillo had violated, the district court and the Tenth Circuit treated the burglary as a violation of subsection (b)(1), which permits a statutory maximum of five-years' imprisonment for commission of a nonaggravated felony prior to deportation. *Id.* at 877 n. 2. Nonetheless, the district court applied a 16–level enhancement for aggravated felonies under guideline § 2L1.2(b)(2) because the May 1989 burglary met the definition of an aggravated felony under the guideline provision. As in this case, the district court sentenced the defendant to the statutory maximum imprisonment—five years—although it appears that the guideline range exceeded the statutory maximum.

On appeal, the defendant argued that, because the district court treated the indictment as a nonaggravated felony for purposes of 8 U.S.C. § 1326(b)(1), thus imposing a maximum of 5 rather than 15 years of imprisonment as required in section (b)(2), it also should have applied the putatively corresponding four-level nonaggravated felony enhancement under U.S.S.G. § 2L1.2(b)(1). *Id.* at 877. The Tenth Circuit held that while such an argument enjoys "a certain symmetry," "there is no indication that the [United States Sentencing] Commission intended to establish a direct correlation between the respective subsections of § 1326 and § 2L1.2(b)." *Id.* at 878.

**8.** This effective date operates retrospectively and therefore brings within its ambit all prior aggravated felonies, no matter what the date of commission. *See United States v. Maul–Valverde*, 10 F.3d 544, 546 (8th Cir.1993) ("§ 2L1.2(b)(2) counts all prior aggravated felonies committed in the United States, no·matter how ancient....").

This operation is compatible with the general approach of the Guidelines. Section 1B1.2(b) directs a court to look at "specific offense characteristics" under the applicable guideline in order to determine the applicable range within the guideline section. *See* U.S.S.G. § 1B1.2(b) & comment. (n.2) (sentencing court first must determine guideline section for offense of conviction, then must look at specific offense characteristics under that guideline to determine range); *see also* U.S.S.G. § 1B1.2(a) ("offense of conviction" means "the offense conduct charged in the count of the indictment or information of which the defendant was convicted"). If "offense of conviction" meant the offense used for enhancement, then sentencing enhancements would be effectively meaningless because the convictions underlying such enhancements would be irrele-

In sum, we believe it is quite clear that no symmetry was intended between the aggravated felony provisions of IMMACT and the aggravated felony provisions of the guideline. Although both provisions address the same basic situation, they provide different solutions to it. The Congress apparently preferred to make the fifteen-year sanction provided by IMMACT prospective in application, but it was content in approving the guideline to employ the normal pattern and to permit the provision to have retrospective effect in the sense that all previous felonies could be brought within its scope. We cannot say that this determination is irrational. The Congress had the opportunity to accept, reject, or modify the guideline provision. Although charged with knowledge of its earlier handiwork, it decided to allow the Commission's handiwork to take effect. A presumption of validity must be given to what Congress and the Sentencing Commission drafted.[9] Therefore, we hold that the district court properly concluded that Mr. Munoz–Cerna's sentence could be enhanced under the "aggravated felony" section of guideline § 2L1.2(b)(2).

## Conclusion

The judgment of the district court is affirmed.

AFFIRMED.

---

vant if they predated the effective date of such enhancements. For example, in § 4B1.1, the career offender guideline, any crimes of violence or serious drug offenses committed prior to November 1, 1987—the effective date of the original career offender guideline and the Sentencing Guidelines as a whole—could not be used as predicate crimes for career offender enhancement. This is not what the Guidelines intended. *See, e.g., United States v. Arzate–Nunez,* 18 F.3d 730, 734 (9th Cir.1994); *United States v. Carson,* 988 F.2d 80, 81 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 142, 126 L.Ed.2d 105 (1993).

**9.** *Cf. Batanic v. INS,* 12 F.3d 662, 668 (7th Cir. 1993) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citing *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1984)).

