UNITED STATES of America,

v.

Bentley Washington WESTCOTT, a/k/a/ "Barrington Glen Morrison," Defendant.

No. 96 CR. 653(SS).

United States District Court, S.D. New York.

April 30, 1997.

---

Jeffrey Leavitt, Cohen, Leavitt, Leavitt & Cohen, New York City, for Defendant.

Steven P. Heineman, Assistant United States Attorney, U.S. Department of Justice United States Attorney Southern District of New York, New York City, for U.S.

## OPINION AND ORDER

SOTOMAYOR, District Judge.

On May 17, 1988, defendant was convicted in New York State court of robbery in the first degree, and sentenced to 5½ to 11 years in prison. On May 20, 1993, defendant was deported from the United States to Jamaica. On December 5, 1996, defendant pleaded guilty to an indictment charging him with illegally reentering the United States in or about March 1994, after being deported subsequent to the commission of an aggravated felony, in violation of 8 U.S.C. § 1326(b)(2).

While awaiting sentencing, defendant wrote the Court and argued that his guilty plea was invalid under the reasoning adopted by the Ninth Circuit in *United States v. Gomez–Rodriguez*, 77 F.3d 1150 (9th Cir.), *aff'd en banc*, 96 F.3d 1262 (1996). Defendant complained that he cannot be deemed an aggravated felon because his robbery conviction occurred before 8 U.S.C. § 1101(a)(43), which defines the term "aggravated felony," was amended to encompass crimes of violence such as robbery. Recog-

nizing a split among circuit courts on this issue, this Court ordered briefing on the matter. The Court now holds that defendant cannot be deemed an aggravated felon for purposes of 8 U.S.C. § 1326(b)(2). Nevertheless, he can receive a maximum five year prison term for illegal reentry under 8 U.S.C. § 1326(b)(1), and his sentence is subject to a 16 level enhancement applicable to aggravated felons under the sentencing guidelines.

### DISCUSSION

#### I. The Statutory Scheme

As of its enactment in 1988, and as of defendant's reentry into the United States, 8 U.S.C. § 1326(b)(2) provided for a maximum 15 year prison sentence for any person who illegally reentered the United States following his or her deportation after committing an aggravated felony. Under 8 U.S.C. § 1326(b)(1), a maximum 5 year penalty applied for illegal reentry by persons "whose deportation was subsequent to a conviction for commission of a felony (other than an aggravated felony)." [1] Thus, defendant's maximum sentence in connection with his illegal reentry into the United States hinges upon whether his prior robbery conviction now qualifies as an aggravated felony or as a felony.

The term aggravated felony, for purposes of section 1326, is defined at 8 U.S.C. § 1101(a)(43), and originally encompassed murder, drug trafficking, firearms trafficking, and conspiracy to commit any of those acts. Robbery did not qualify as an aggravated felony. As part of the Immigration Act of 1990, however, Congress expanded the definition of aggravated felony, and provided an effective date for the amendments:

(a) IN GENERAL—Paragraph (43) of section 101(a) (8 U.S.C. 1101(a)) is amended—

(1) by aligning its left margin with the left margin of paragraph (42),

(2) by inserting "any illicit trafficking in any controlled substance (as defined in sec-

---

1. Congress has since increased the maximum penalties under 8 U.S.C. § 1326(b) to 20 years incarceration for aggravated felons, and 10 years incarceration for felons. *See* Violent Crime Con-

trol and Law Enforcement Act of 1994, Pub.L. No. 103–322, Title XIII, 130001(b), 108 Stat. 1796, 2023.

tion 102 of the Controlled Substances Act), including" after "murder,"

(3) by inserting after "such title", the following: "any offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), *or any crime of violence* (as defined in section 16 of Title 18, United States Code, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years."

(4) by striking "committed within the United States."

(5) by adding at the end the following: "Such term applies to offenses described in the previous sentence whether in violation of Federal or State law.", and

(6) by inserting before the period of the sentence added by paragraph (5) the following: "and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years."

(b) Effective date—*The amendments made by subsection (a) shall apply to offenses committed on or after the date of the enactment of this Act,* except that the amendments made by paragraphs (2) and (5) of subsection (a) shall be effective as if included in the enactment of section 7342 of the Anti–Drug Abuse Act of 1988.

Immigration Act of 1990, Pub.L. No. 101–649, §§ 501(a), 501(b), 104 Stat. 4978, 5048 (1990) (emphasis added). Both parties recognize that if this expanded definition of aggravated felony reaches "crime[s] of violence" which occurred prior to the enactment of the Immigration Act, defendant's robbery conviction will render him an aggravated felon for purposes of 8 U.S.C. § 1326(b)(2).

Reasoning that the "offense" at issue for purposes of section 501(b) is defendant's illegal reentry, which occurred "after the date of the enactment of [the Immigration] Act," the government argues that the amended definition of aggravated felony applies in this case. Defendant challenges this reading of section 501(b), arguing that the "offenses" referenced in that provision are limited to those

offenses delineated as aggravated felonies in section 501(a) of the Act (*e.g.,* crimes of violence). Because his robbery conviction predated the November 29, 1990 enactment of the Immigration Act, defendant maintains that he cannot now be deemed an aggravated felon. For those reasons to be discussed, the Court finds that defendant's reading of section 501(b) is as reasonable as the government's, and that the rule of lenity therefor requires that the provision be applied according to defendant's interpretation.

A. Statutory Construction

The Second Circuit recently set out the general rules of statutory construction which guide the interpretation of criminal provisions:

"Statutory interpretation starts with the statute itself, and we read a statute applying the 'ordinary, contemporary, common meaning' of the words used." *United States v. Kinzler,* 55 F.3d 70, 71 (2d Cir. 1995) (quoting *United States v. Piervinanzi,* 23 F.3d 670, 677 (2d Cir.), *cert. denied,* 513 U.S. 900, 115 S.Ct. 259, 130 L.Ed.2d 179 (1994)). "When the language of the statute is clear and does not contradict a clearly expressed legislative intent, our inquiry is complete and the language controls." *Kinzler,* 55 F.3d at 71. "Any ambiguity concerning the scope of a criminal statute, however, must be 'resolved in favor of lenity.'" *Id.* (quoting *Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971)). "The rule of lenity serves to aid the court in interpreting a criminal statute only if there is an ambiguity." *United States v. Litchfield,* 986 F.2d 21, 22 (2d Cir.1993). "It comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers." *Id.* (internal quotations omitted). "The rule of lenity is not used to narrow a statute that has an unambiguously broad thrust." *Id.*

*United States v. Collado,* 106 F.3d 1097, 1101 (2d Cir.1997) (finding ambiguity in sentencing enhancement provision); *see also Moskal v. United States,* 498 U.S. 103, 108, 111 S.Ct.

461, 465, 112 L.Ed.2d 449 (1990) (rule of lenity applies only in "situations in which a reasonable doubt persists about a statute's intended scope even after resort to the language and structure, legislative history, and motivating policies of the statute."). Those circuit courts to have considered the issue are now divided as to whether the basic rules of statutory construction require that the 1990 amendments to the definition of aggravated felony be applied retroactively for purposes of a prosecution for illegal reentry under 8 U.S.C. § 1326. *Compare United States v. Gomez–Rodriguez*, 96 F.3d 1262 (9th Cir.1996) (rejecting retroactive application of the 1990 amendments to the definition of aggravated felony), *with United States v. Garcia–Rico*, 46 F.3d 8 (5th Cir.) (applying amended definition of aggravated felony retroactively), *cert. denied*, 515 U.S. 1150, 115 S.Ct. 2596, 132 L.Ed.2d 843 (1995); *United States v. Campbell*, 94 F.3d 125 (4th Cir. 1996) (applying amended definition of aggravated felony retroactively). The Second Circuit has not yet addressed this question.

■ The Ninth Circuit, in a recent *en banc* decision, unanimously upheld the district court's determination that, "as a matter of statutory interpretation, [ ] the expanded definition [of aggravated felony] did not apply to crimes committed prior to the date of enactment of the statutory amendment." *Gomez–Rodriguez*, 96 F.3d at 1263. The Court looked to the "plain meaning" of the provision:

> The only logical reading of section 501(b) is that the amendments set forth in section 501(a) generally apply to the offenses enumerated in that section committed on or after the day of enactment, but that those offenses enumerated in paragraphs (2) and (5) of section 501(a) apply as if they were enacted in 1988. Since the exceptions to the general provision clearly apply to section 501(a), it is equally clear that the general provision regarding offenses applies to section 501(a), rather than section 1326(b)(2) found elsewhere in the Code.

*Gomez–Rodriguez*, 96 F.3d at 1264. On this basis, the Court rejected the very argument which the government now advances; specifically, that "the term 'offenses' in section 501(b) refers to the offenses of reentry after deportation as provided in section 1326(b)(2), not the offenses described in the definition section 1101." *Id.*

Unlike the Ninth Circuit, both the Fourth and Fifth Circuits have accepted the government's position. *See Garcia–Rico*, 46 F.3d 8; *see also Campbell*, 94 F.3d 125.[2] The *Garcia–Rico* and *Campbell* Courts each emphasized that the aggravated felonies referenced under 8 U.S.C. § 1326(b)(2) "were not elements of the crime of illegal reentry but [were] intended to enhance penalties for certain aliens who unlawfully reentered the United States after having been deported." *Campbell*, 94 F.3d at 128; *see also Garcia–Rico*, 46 F.3d at 10. On this basis, these courts reasoned that the "relevant offense [under section 1326] is the illegal reentry into this country and not the felonies committed prior to deportation." *Garcia–Rico*, 46 F.3d at 10; *see also Campbell*, 94 F.3d at 128. Because section 501(b) is effective as to offenses committed after enactment of the Immigration Act of 1990, and because the defendants in both cases reentered the United States after 1990, the *Campbell* and *Garcia–Rico* Courts deemed those defendants aggravated felons on the basis of crimes they had committed before 1990. *Id.*

Though the Fourth and Fifth Circuits have identified a plausible interpretation of the Immigration Act, the logic that those circuits have applied is not entirely satisfying. As an initial matter, the *Campbell* and *Garcia–Rico* Courts are correct that 8 U.S.C. § 1326(b) is a sentence enhancing provision, and that the offense actionable under section 1326 is illegal reentry into the United States, and not those crimes defined as aggravated felonies. *See United States v. Cole*, 32 F.3d 16, 18 (2d Cir.) ("Section 1326(b) does not create a separate criminal offense, but is a sentence-enhancement provision for the offense defined in section 1326(a)."), *cert. denied*, 513

---

**2.** The *Garcia–Rico* Court relied principally upon the Ninth Circuit's decision in *United States v. Ullyses–Salazar*, 28 F.3d 932 (9th cir.1994). In its *en banc* ruling in *Gomez–Rodriguez*, issued after the *Garcia–Rico* decision, the Ninth Circuit rejected it earlier reasoning in *Ullyses–Salazar*. *See Gomez–Rodriguez*, 96 F.3d at 1265.

U.S. 993, 115 S.Ct. 497, 130 L.Ed.2d 407 (1994); *see also United States v. Valdez*, 103 F.3d 95, 97 (10th Cir.1996) (and cases cited therein). However, this fact does not carry the talismanic significance that the Fourth and Fifth circuits seemingly ascribe to it. Section 501(b) provides that the amended definition of aggravated felony applies to offenses committed *after November 1990*: even upon concluding that section 1326(b) is a sentence enhancing provision, it remains to be determined whether section 501(b) refers to those offenses actionable under the immigration laws (*e.g.*, illegal reentry under section 1326) or solely to those offenses defined as aggravated felonies under section 501(a) (*e.g.*, crimes of violence). In other words, the status of 8 U.S.C. § 1326(b) as a sentence enhancing provision merely makes the government's interpretation of section 501(b) viable; it by no means renders the Ninth Circuit's contrary interpretation unreasonable.[3] An ambiguity persists.

Looking to the structure and language of section 501 of the Immigration Act, the Court is persuaded that the Ninth Circuit has adopted a natural and reasonable reading of that provision. Section 501(a) identifies a number of new aggravated felonies—several of which are referred to explicitly as "offenses"—and section 501(b) provides that the effective date of the amendment applies with respect to "offenses" committed after November 29, 1990. Considering that the word "offense" is used throughout section 501(a) in referring to the identified aggravated felonies, the word offense, as it is used in section 501(b), could easily be understood to refer back to the various aggravated felonies set forth in the section which immediately precedes it. As the Ninth Circuit also observed, this plain reading is reinforced by the exceptions to the November 1990 effective date announced in section 501(b). Section 501(b) provides that two sets of crimes identified in section 501(a) are effective as if they were included in the Anti–Drug Abuse Act of 1988,

the legislation which first added section 1326(b)(2) to the illegal reentry statute. Thus, for purposes of carving out an exception to its generally applicable effective date, section 501(b) relates back to section 501(a); it is therefore reasonable to conclude that the general rule set forth in section 501(b) itself relates back to the remaining offenses delineated in that same section. In short, section 501(b) can reasonably and naturally be construed to provide that most of those crimes set forth in section 501(a)—including crimes of violence—are aggravated felonies only to the extent that they occurred after November 29, 1990.

A number of other considerations provide additional support for defendant's interpretation of section 501. For instance, in its Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), Congress again expanded the definition of aggravated felony. This time, Congress provided that an aggravated felony may occur "whether the conviction was entered before, on, or after the date of enactment" of the legislation. IIRARA, Pub.L. No. 104–208, Div. C, Title III § 321(b), 110 Stat. at 1702. Though this language might be taken to suggest that Congress was disappointed with the approach adopted by the Ninth Circuit in *Gomez–Rodriguez*, the clarity with which Congress has most recently spoken demonstrates—in stark terms—the relative ambiguity of section 501(b) of the Immigration Act of 1990. Indeed, the more recent legislation confirms that Congress, had it intended a different result in connection with its 1990 enactment, possessed the ability to speak far more clearly on the issue than it in fact did.

■ Finally, the legislative history of the Immigration Act of 1990 provides no real guidance in resolving this matter. The government merely assumes, without identifying any pertinent legislative history, that Congress intended the amended definition of aggravated felony to reach back as broadly as

---

**3.** Defendant fails to recognize this, and mistakenly accepts the proposition that, if 8 U.S.C. § 1326(b) is a sentence enhancement provision, the amended definition of aggravated felony necessarily applies against him in this case. Defendant therefore urges this Court to reject the Sec-

ond Circuit's unequivocal determination that section 1326(b) is a sentence enhancing provision. *See Cole*, 32 F.3d 16. Though defendant relies upon an argument that is without merit, the Court agrees with defendant's conclusion based upon a different set of considerations.

possible without offending the *ex post facto* clause of the Constitution. Because the offense actionable under 8 U.S.C. § 1326 is illegal reentry, which here allegedly occurred after the 1990 Immigration Act took effect, the government is correct that it would not offend the *ex post facto* clause for the Court to enhance defendant's penalties on the basis of a crime first defined as an aggravated felony subsequent to the time it was committed. *See United States v. Forbes,* 16 F.3d 1294, 1302 (1st Cir.1994) (an enhanced penalty, "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because it is the latest one.") (citing *Gryger v. Burke,* 334 U.S. 728, 732, 68 S.Ct. 1256, 1258–59, 92 L.Ed. 1683 (1948)); *see also United States v. Cabrera–Sosa,* 81 F.3d 998, 1001 (10th Cir.) (applying 1988 definition of aggravated felony to drug offense committed in 1986, and sentencing defendant under 1326(b)(2)), *cert. denied,* —— U.S. ——, 117 S.Ct. 218, 136 L.Ed.2d 151 (1996). The fact that Congress could have applied the amended definition of aggravated felony retroactively, however, does not speak to whether this is what Congress in fact meant to do. Indeed, it is at least plausible that, when it enacted the Immigration Act of 1990, Congress considered it equitable to apply only two of the newly defined aggravated felonies to those crimes predating the Act. The government argues that such an approach could not have been intended, since the excepted crimes are no more serious than those crimes deemed aggravated felonies as of November 29, 1990. In the absence of clearer guidance from Congress, however, it is not this Court's role to make what amounts to a policy determination regarding the relative severity of the identified crimes.

In sum, the government offers several arguments which render its interpretation of section 501(b) plausible, but no arguments which unambiguously preclude the Ninth Circuit's reading of that same provision. For instance, the government is correct that the offense actionable in 8 U.S.C. § 1326 is defendant's illegal reentry, and not his robbery; this does not mean, however, that section 501(b) of the Immigration Act refers to the offense actionable in 8 U.S.C. § 1326, and not solely to those offenses described as aggravated felonies in section 501(a) of the Act. Also, the government may be right that the language employed in section 501(b) evinces Congress's intention to apply the amended definition of aggravated felony as broadly as possible without offending the *ex post facto* clause of the Constitution; it is at least equally possible, however, that this language demonstrates Congress's intention to give only certain of the newly defined aggravated felonies such broad effect. In short, the Ninth Circuit has identified an interpretation of section 501 which favors defendant, which appears reasonable, and which cannot be rejected through the applicable tools of statutory construction.

"The rule of lenity requires the sentencing court to impose the lesser of two penalties where there is an actual ambiguity over which penalty should apply." *United States v. Canales,* 91 F.3d 363, 367 (2d Cir.1996) (internal quotation omitted); *see also Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (holding that the rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose."); *United States v. Buchanon,* 909 F.Supp. 99, 101 (N.D.N.Y.1995) ("The rule of lenity requires a court to impose the lesser (or lighter) penalty where a criminal statute is ambiguous in its reach or penalty provisions."). For all of those reasons discussed, neither the plain language of Section 501, nor its legislative history provides any conclusive indication as to whether Congress intended for the amended definition of aggravated felony to apply retroactively in connection with prosecutions for illegal reentry into the United States under 8 U.S.C. § 1326. In fact, a natural reading of the provision suggests that such an application was not intended. In any event, the rule of lenity assures defendant the benefit of the doubt, and requires that this Court treat defendant's robbery conviction as a felony under 8 U.S.C. § 1326(b)(1), and not as an

aggravated felony under 8 U.S.C. § 1326(b)(2).[4]

## II. Application of the Sentencing Guidelines

■ Because defendant cannot be deemed an aggravated felon for purposes of 8 U.S.C. § 1326(b)(2), he is subject to the 5 year maximum sentence of 8 U.S.C. § 1326(b)(1). A question remains, however, as to whether defendant can be deemed an aggravated felon under the sentencing guidelines, which provide for a 16 level enhancement applicable to aggravated felons convicted of illegal reentry into the United States. See U.S.S.G. § 2L1.2(b)(2).

Sentencing Guideline § 2L1.2 governs sentencing for convictions under 8 U.S.C. § 1326. According to this provision, as amended effective November 1, 1991, sentence enhancement is appropriate depending upon the following "Specific Offense Characteristics":

(1) If defendant previously was deported after a conviction for a felony, other than a felony involving violation of the immigration laws, increase by 4 levels.

(2) If the defendant previously was deported after a conviction for an aggravated felony, increase by 16 levels.

U.S.S.G. § 2L1.2(b). Application Note 7 to § 2L1.2 defines aggravated felony to include "any crime of violence ... for which the term of imprisonment imposed ... is at least five years." As the source of this definition, Application Note 7 cites to 8 U.S.C. § 1101(a)(43).

The Circuit courts are thus far divided as to whether the 16 level enhancement under U.S.S.G. § 2L1.2 applies to defendants who cannot be deemed aggravated felons, under 8 U.S.C. § 1326(b)(2), consistently with the effective date provision of section 501(b) of the Immigration Act of 1990. See United States v. Munoz-Cerna, 47 F.3d 207 (7th Cir.1995) (applying aggravated felony enhancement under 8 U.S.C. § 1326(b)(1)); United States v. Fuentes-Barahona, 111 F.3d 651 (9th Cir. 1996) (vacating district court's application of 16 level aggravated felony enhancement under 8 U.S.C. § 1326(b)(1)). This Court is persuaded by the Seventh Circuit's approach, and concludes that defendant is subject to a 16 level sentence enhancement based upon his robbery conviction in 1986.

"[T]he guideline was intended to be applied without reference to the specific subsections of the underlying statute." Munoz-Cerna, 47 F.3d at 211 (adapting reasoning of Tenth Circuit in United States v. Frias-Trujillo, 9 F.3d 875 (10th Cir.1993)); see also United States v. Eversley, 55 F.3d 870 (3d Cir.1995) (applying aggravated felony enhancement to a defendant who entered a guilty plea under 8 U.S.C. § 1326(b)(1)). As explained by the Tenth Circuit:

Neither the commentary nor the statutory appendix breaks down the applicability of § 2L1.2(b) into subsections. Furthermore, the Guidelines direct the district court to consider the 'specific offense characteristics' in determining the appropriate sentencing range within the applicable guideline. U.S.S.G. § 1B1.2, comment. (n. 2). Section 2L1.2(b) is explicitly captioned "Specific Offense Characteristics," and states "[i]f more than one applies, use the greater." U.S.S.G. § 2L1.2(b). This language clearly indicates that the sentencing court's consideration is not limited by the particular subsection of § 1326 at issue.

Frias-Trujillo, 9 F.3d at 877. Simply put, U.S.S.G. § 2L1.2 must be interpreted according to its own terms, and not according to the terms of 8 U.S.C. § 1101(a)(43).[5] Id.

Because the proper construction of U.S.S.G. § 2L1.2 is not tied to 8 U.S.C.

---

4. The Court rejects that portion of the Ninth Circuit's Gomez-Rodriguez decision which holds that 8 U.S.C. § 1326(b)(1) and 8 U.S.C. § 1326(b)(2) are separate offenses, and that an indictment incorrectly charging an aggravated felony under § 1326(b)(2) must therefore be dismissed. See Gomez-Rodriguez, 96 F.3d at 1265. Because the Second Circuit has determined that section 1326(b) is merely a sentence enhancing provision, and not a distinct offense, the indictment properly charges defendant with illegal reentry under section 1326. See Cole, 32 F.3d at

18. Therefore, as he accepts in his memorandum of law, defendant is now subject to sentencing under the terms of 8 U.S.C. § 1326(b)(1). (Memo. at 10 ("the felony committed by Mr. Westcott was not an aggravated felony, and, as such, he should be sentenced in accordance with the provisions of 8 U.S.C. 1326(b)(1).").)

5. Even the Ninth Circuit, in its Fuentes-Barahona decision, agrees with the "narrow proposition" that there is "no symmetrical relationship between 8 U.S.C. § 1326(b) and U.S.S.G. 2L1.2."

§ 1101(a)(43), the Court finds that the term aggravated felony, for purposes of section 2L1.2, applies retroactively. Indeed, nothing in U.S.S.G. § 2L1.2 suggests any design to disrupt the ordinary operation of the guidelines; past acts are routinely used to enhance sentences for other crimes, even to the extent that those acts, at the time they were committed, did not carry any such implications. *See United States v. Amaya–Benitez,* 69 F.3d 1243, 1249 (2d Cir.1995) (overturning district court's downward departure from 16 level enhancement, in connection with conviction under 8 U.S.C. § 1326(b), where underlying aggravated felony—a crime of violence—was "ancient")[6]; *see also United States v. Pryce,* 1996 WL 122438 (S.D.N.Y. March 20, 1996) (holding that 16 level enhancement applied in the case of a defendant who committed an "aggravated felony" before it was first defined as such under the Immigration and Nationality Act of 1988).

Unlike the Ninth Circuit, this Court finds no ambiguity in the guidelines as to whether the effective date language contained in section 501(b) of the Immigration Act of 1990 is meant to apply to section 2L1.2. Application Note 7, after defining aggravated felony, merely indicates "*see* 8 U.S.C. § 1101(a)(43)." It is an unreasonable stretch indeed to reason that this spare wording was intended to incorporate the effective date provision of section 501(b) of the Immigration Act, which applies to the amended definition of aggravated felony included in section 50l(a). The word *see* was most obviously intended simply to indicate that the definition of aggravated felony, fully set out in Application Note 7, had its source in the language of 8 U.S.C. § 1101(a)(43). In other words, Application

Note 7 attributes its definition of aggravated felony to section 1101(a)(43), but in no way suggests that the definition it adapts is qualified or limited by any unnoted considerations independently bearing upon section 1101(a)(43). Thus, the word "*see,*" included in Application Note 7, provides no reasonable basis for detecting an ambiguity as to the appropriate operation of U.S.S.G. § 2L1.2.

In sum, "Congress apparently preferred to make the fifteen-year sanction provided by [the Immigration Act of 1990] prospective in application, but it was content in approving the guideline to employ the normal pattern and to permit the provision to have retrospective effect in the sense that all previous felonies could be brought within its scope." *Munoz–Cerna,* 47 F.3d at 212. Accordingly, the sixteen level sentence enhancement applicable to aggravated felons under U.S.S.G. § 2L1.2 applies to defendant in this matter, though he is subject only to a five year maximum sentence under 8 U.S.C. § 1326(b)(1).

## CONCLUSION

For the reasons discussed, defendant cannot be deemed an aggravated felon under 8 U.S.C. § 1326(b)(2), and he must instead be sentenced in accordance with 8 U.S.C. § 1326(b)(1). Nevertheless, defendant is subject to the 16 level sentence enhancement applicable to aggravated felons pursuant to U.S.S.G. § 2L1.2.

**SO ORDERED.**

---

*See Fuentes–Barahona,* 111 F.3d at 652–53 (approving *United States v. Pena–Carrillo,* 46 F.3d 879, 884 (9th Cir.), *cert. denied,* 514 U.S. 1122, 115 S.Ct. 1990, 131 L.Ed.2d 876 (1995)). Unlike the Seventh Circuit in *Munoz–Cerna,* however, the *Fuentes–Barahona* Court detected an ambiguity, under the terms of Application Note 7, as to effective date of U.S.S.G. § 2L1.2. For the above discussed reasons, this Court finds no such ambiguity.

**6.** Though the defendant in *Amaya–Benitez* was deemed an aggravated felon on the basis of a violent crime committed before 1990, the *Amaya–Benitez* Court did not address the effective date provision of section 501(b) of the Immigra-

tion Act, and did not determine whether the defendant's conviction was proper under 8 U.S.C. § 1326(b)(1) as opposed to 8 U.S.C. § 1326(b)(2). It appears that the defendant, who entered a guilty plea under section 1326(b) and accepted that he was an aggravated felon for purposes of section 2L1.2, raised no dispute in connection with these issues. *See Amaya–Benitez,* 69 F.3d at 1245. The *Amaya–Benitez* Court therefore focused exclusively upon whether the 16 level enhancement announced under section 2L1.2 applied, without any downward departure, for purposes of formulating defendant's sentence. The Second Circuit determined that the enhancement did apply, and that a downward departure was unwarranted.