UNITED STATES of America,
Appellee,

v.

Nelson LUNA–REYNOSO, aka Nelson Meraldo Luna–Reynoso, aka Nelson Luna, aka Nelson Arroyo, aka Juan Lopez, aka Armando Montalvo, Defendant–Appellant.

Docket No. 00–1650.

United States Court of Appeals, Second Circuit.

Argued April 4, 2001.

Decided July 20, 2001.

Steven R. Glaser, Assistant United States, Attorney, New York, NY, (Mary Jo White, United States Attorney for the Southern District of New York, Robert Khuzami, Assistant United States Attorney, New York, NY, on the brief), for Appellee.

Alan M. Nelson, Lake Success, New York, for Defendant–Appellant.

Before KEARSE and CABRANES, Circuit Judges, DAVID G. TRAGER, District Judge *.

KEARSE, Circuit Judge:

Defendant Nelson Luna–Reynoso appeals from a judgment of conviction entered in the United States District Court for the Southern District of New York, Deborah A. Batts, *Judge*, following his conditional plea of guilty to unlawfully reentering the United States without the permission of the United States Attorney General, after having been deported following conviction of an aggravated felony, in violation of 8 U.S.C. § 1326 (Supp. III 1997). Pursuant to subsection (b) of that section and § 2L1.2(b)(1)(A) of the Sentencing Guidelines ("Guidelines"), Luna–Reynoso was sentenced principally to 86 months' imprisonment. On appeal, he contends chiefly that the sentencing enhancements provided in those sections for an illegally reentering alien who had been deported after conviction of an aggravated felony were improperly applied to him because his predeportation offense of burglary, at the time of the burglary conviction, was not within the pertinent definition of aggravated felony. He also contends that the district court erred in believing that it had no authority to grant him a downward departure pursuant to Guidelines § 5K2.0 in order to ensure that he receive credit for the time during which he was in federal custody prior to sentencing. Finding no merit in these contentions, we affirm.

## I. BACKGROUND

Luna–Reynoso immigrated with his family to the United States from the Dominican Republic in 1970 at the age of five. During his adolescent and adult years, he was convicted of a number of theft-related offenses, including third-degree burglary in 1987 for which he was sentenced to 42 to 84 months' imprisonment.

After serving his prison term, Luna–Reynoso was deported in August 1994. Within three months, he reentered the United States without the permission of the Attorney General. He was twice arrested and charged with state offenses in or after November 1994. Federal immigration officials learned of his presence in the United States in 1997 and he was charged with violating 8 U.S.C. § 1326. He pleaded guilty and was sentenced principally to 21 months' imprisonment. In July 1998, he was deported again.

Less than a year later, Luna–Reynoso again reentered the United States without the permission of the Attorney General. He was arrested by local police in New York City in July 1999 and was charged

---

* Honorable David G. Trager, of the United States District Court for the Eastern District of New York, sitting by designation.

with various theft-related offenses. Federal immigration officials thereafter "found" Luna–Reynoso in the United States while he was in the custody of the New York State Department of Corrections, and in November 1999 he was transferred to federal custody. Luna–Reynoso was again charged with violating 8 U.S.C. § 1326. The indictment also alleged that prior to being deported, Luna–Reynoso had been convicted of an aggravated felony, to wit, third-degree burglary in 1987.

With the consent of the government and the district court, Luna–Reynoso entered a conditional plea of guilty, reserving the right to challenge the treatment of his 1987 burglary offense as an aggravated felony. He conceded the existence and validity of the 1987 burglary conviction; but he pointed out that, for purposes of sentencing under § 1326, burglary was not included in the definition of aggravated felony until 1996. He thus argued that his Guidelines offense level should not be increased by 16 steps, as required for a predeportation aggravated felony, but only by four steps because his 1987 burglary, at the time, was not an aggravated felony.

The district court rejected this contention. It noted that although burglary offenses were not defined as aggravated felonies until the definition of aggravated felony was amended in 1996, Congress plainly stated, in enacting that amendment, that the new definition was to be used immediately, regardless of when the newly included offenses had been committed. Accordingly, applying Guidelines § 2L1.2(a), which sets the base offense level for a § 1326 offense at eight, and Guidelines § 2L1.2(b)(1)(A), which requires a 16 step increase in offense level for a § 1326 offender who prior to his deportation had been convicted of an aggravated felony, the court concluded that Luna–Reynoso's total offense level was 24.

Given his criminal history category of VI, the applicable Guidelines range was 77–96 months.

Luna–Reynoso requested that the court grant him, *inter alia*, a downward departure of approximately 10 months pursuant to Guidelines § 5K2.0 in order to ensure that he receive credit for the time between his transfer into federal custody in November 1999 and his sentencing in September 2000. The district court rejected Luna–Reynoso's sentencing-credit requests and imposed a prison term of 86 months. This appeal followed.

## II.  DISCUSSION

On appeal, Luna–Reynoso principally pursues his contention that it was error for the district court to consider his 1987 burglary conviction as a conviction of an aggravated felony because burglary was not within the definition of aggravated felony in 1987. He also contends that the court erroneously failed to grant him a § 5K2.0 departure because it misapprehended its authority to do so. We find no merit in these arguments.

A. *The Aggravated Felony Sentencing Enhancement*

■ Under the Immigration and Nationality Act, it is unlawful for an alien who has been deported from the United States to reenter or be found in the United States without the permission of the Attorney General of the United States. *See* 8 U.S.C. § 1326(a). The penalties for violating that section vary principally according to the defendant's criminal record. *See id.* § 1326(b); *see generally Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998); *United States v. Campbell*, 167 F.3d 94, 96 (2d Cir.1999). A defendant who has no prior criminal record is generally subject to imprisonment for up to two years. *See* 8

U.S.C. § 1326(a); *but see id.* § 1326(b)(3) (providing up to 10 years' imprisonment for an alien entering the United States without permission after removal or exclusion for reasons of, *inter alia,* national security). A defendant who violates § 1326(a) after having been deported subsequent to convictions for "three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony)," is subject to imprisonment for up to 10 years. 8 U.S.C. § 1326(b)(1). A defendant who violates § 1326(a) after having been deported "subsequent to a conviction for commission of an aggravated felony," is subject to imprisonment for up to 20 years. 8 U.S.C. § 1326(b)(2).

The term "aggravated felony," as used in § 1326, is defined in 8 U.S.C. § 1101(a)(43). Prior to 1996, that definition did not include burglary. *See* 8 U.S.C. § 1101(a)(43) (1994). Effective September 30, 1996, that section was amended by § 321 of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, § 321, 110 Stat. 3009–627 to 3009–628, which expanded the term "aggravated felony" to include, *inter alia,* "a theft offense ... or burglary offense for which the term of imprisonment [was] at least one year," 8 U.S.C. § 1101(a)(43)(G) (Supp. V 1999). In addition, a sentence was added to 8 U.S.C. § 1101(a)(43) stating that the new definition of aggravated felony is to be used "regardless of whether the conviction" for the offense included in the definition "was entered before, on, or after" the September 30, 1996 effective date of IIRIRA. IIRIRA, Pub.L. No. 104–208, § 321, 110 Stat. 3009–628 (codified as amended at 8 U.S.C. § 1101(a)(43) (Supp. V 1996)).

In implementation of these provisions, the Guidelines provide that a § 1326 defendant's base offense level is eight. *See* Guidelines § 2L1.2(a). The offense level of a defendant whose deportation followed his conviction of a felony that is not an aggravated felony is increased by four steps. *See id.* § 2L1.2(b)(1)(B). The offense level of a defendant whose deportation followed his conviction of an aggravated felony is increased by 16 steps. *See id.* § 2L1.2(b)(2). The commentary to these sections notes that the term " '[a]ggravated felony,' is defined at 8 U.S.C. § 1101(a)(43) without regard to the date of conviction of the aggravated felony." Guidelines § 2L1.2 Application Note 1.

In contending that the new definition of aggravated felony cannot encompass newly included crimes of which the defendant had been convicted prior to the expansion of the definition, Luna–Reynoso relies principally on the district court's decision in *United States v. Westcott,* 966 F.Supp. 186 (S.D.N.Y.1997), *aff'd,* 159 F.3d 107, 117 (2d Cir.1998), and this Court's decision in *St. Cyr v. INS,* 229 F.3d 406 (2d Cir.2000) ("*St.Cyr*"), *aff'd,* —— U.S. ——, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). His reliance on each is misplaced.

*United States v. Westcott* dealt with a defendant who had violated § 1326 in 1994, when § 1101 provided a different definition of aggravated felony, the retrospectivity of which was ambiguous. The district court applied the rule of lenity in ruling that Westcott's prior offense-first-degree robbery-was not an aggravated felony within the meaning of § 1326(b)(2), but it concluded that robbery was an aggravated felony for purposes of Guidelines § 2L1.2(b)(2). *United States v. Westcott,* 966 F.Supp. at 191–92. On Westcott's appeal, this Court, assuming without deciding that the district court had correctly ruled that robbery was not an aggravated felony within the meaning of the statute, *see United States v. Westcott,* 159 F.3d at 114, upheld the 16 step sentencing en-

hancement under the Guidelines, *see id.* at 117. Thus, it is clear that neither the rationale nor the result in *Westcott* provides support for Luna–Reynoso's interpretation of the statute or the Guidelines. The district court's interpretation of the statute was based on a different aggravated-felony definition and a different Congressional statement as to retrospective effect; and even without application of the statute, the 16 step enhancement provided by the Guidelines was upheld.

Nor is Luna–Reynoso's position supported by *St. Cyr*, which involved the 1996 version of the Immigration and Nationality Act, *i.e.*, the same version at issue here, but dealt with a different provision. The provision at issue in *St. Cyr* concerned the discretion enjoyed by the Attorney General to grant a permanent resident alien relief from deportation; that provision was amended in 1996 by § 304 of IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–597, *codified at* 8 U.S.C. § 1229b (Supp. V 1999), and by § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1277, *codified at* 8 U.S.C. § 1182(c) (Supp. V 1999), to limit the Attorney General's discretion by "effectively preclud[ing] an alien, who is removable from the United States because of a conviction of a crime that qualifies as an 'aggravated felony' . . . from requesting discretionary relief from removal," *St. Cyr*, 229 F.3d at 408. We considered whether that limitation should be applied to an alien whose conviction of the offense that rendered him deportable, entered upon his plea of guilty, predated the effective date of those amendments. Applying the "presumption . . . [that] is deeply rooted in [American] jurisprudence," *Landgraf v. USI Film Products*, 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), "that statutes are not afforded retrospective effect *unless* 'Congress has clearly manifested its intent to*

the contrary,' " *St. Cyr*, 229 F.3d at 412 (quoting *Hughes Aircraft v. United States*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (emphasis ours)), we began with the two-step inquiry contemplated by *Landgraf*, asking "(1) whether Congress prescribed the statute's temporal reach and, if not, (2) . . . whether retrospective application would have a 'retroactive effect.' " *St. Cyr*, 229 F.3d at 413. After finding that Congressional intent as to whether the discretionary-relief limitations were to be applied to preenactment convictions was "ambiguous," *id.* at 414, we proceeded to the second question. Noting that " 'individuals should have an opportunity to know what the law is and to conform their conduct accordingly,' " *id.* at 412, 420 (quoting *Landgraf*, 511 U.S. at 265, 114 S.Ct. 1483), and concluding that application of the new limitations to aliens such as St. Cyr, who had entered pleas of guilty prior to the effective date of those limitations and had likely relied on the possibility of discretionary relief from deportation, would have an adverse retroactive effect, *see id.* at 419–20, we held that the new limitations should not be applied to them. An essential element of that conclusion was, plainly, the fact that Congress's intent as to the temporal reach of those new limitations was ambiguous.

■ Here, however, there is no ambiguity as to Congress's intent with regard to the proper temporal reach of the new definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), for the amending section stated as follows:

EFFECTIVE DATE OF DEFINITION.—Section 101(a)(43) (8 U.S.C. 1101(a)(43)) is amended by adding at the end the following new sentence: "Notwithstanding any other provision of law (including any effective date), *the term applies regardless of whether the convic-*

*tion was entered before, on, or after the date of enactment of this paragraph.”* IIRIRA, Pub.L. No. 104–208, § 321, 110 Stat. 3009–628, (codified as amended at 8 U.S.C. § 1101(a)(43) (Supp. V 1999)) (emphasis added). By this "before, on, or after" language, Congress made its intent clear that a § 1326 defendant's predeportation felony is to be considered an aggravated felony if it comes within the definition of that term as amended, regardless of when that felony conviction was entered. *Accord Sousa v. INS,* 226 F.3d 28, 33–34 (1st Cir.2000); *Aragon–Ayon v. INS,* 206 F.3d 847, 852–53 (9th Cir.2000); *Alfarache v. Cravener,* 203 F.3d 381, 384 (5th Cir.) (per curiam), *cert. denied,* 531 U.S. 813, 121 S.Ct. 46, 148 L.Ed.2d 16 (2000); *United States v. Estrada–Quijas,* 183 F.3d 758, 761 (8th Cir.1999). Indeed, in affirming this Court's decision in *St. Cyr,* the Supreme Court noted that the ambiguity of Congress's intent as to the retrospectivity of the discretionary-relief provision was highlighted by the contrast in Congress's "clear[ ] state[ment]s" of its intent to give retrospective effect to the expanded definition of " 'aggravated felony.' " *INS v. St. Cyr,* —— U.S. at ——, 121 S.Ct. at 2289.

Luna–Reynoso's present unlawful reentry offense was committed in 1998 or 1999, well after the 1996 amendment of the term "aggravated felony." He thus had the opportunity to know that that reentry into the United States without permission of the Attorney General would expose him to a prison term of up to 20 years, and the retrospective application of the expanded aggravated-felony definition to his criminal record is not an impermissible retroactive effect. The offense-level schedule set out in Guidelines § 2L1.2 simply gives effect to the plainly expressed, permissible Congressional intent. The district court correctly applied § 2L1.2(b)(1)(A) to Luna–Reynoso, recognizing his 1987 burglary conviction as a conviction for an aggravated felony, as required by 8 U.S.C. § 1101(a)(43)(G), and increasing his offense level by 16 steps.

B. *The Requested Departure To Give Sentencing Credit*

Luna–Reynoso also contends that the district court, because of a misapprehension of its authority, erred in failing to grant him a downward departure pursuant to Guidelines § 5K2.0 to credit him for the approximately 10 months he was held in federal custody between the date of his transfer from state custody and the date of his sentencing. This contention is meritless because the district court had no such authority.

■ The date on which a defendant's sentence commences and the credit he is to be given for time he has spent in custody are governed by 18 U.S.C. § 3585, which provides as follows:

(a) **Commencement of sentence.**—A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

(b) **Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585. The authority "to determine when a sentence is deemed to 'commence'" under § 3585(a) resides in the Bureau of Prisons, rather than in the sentencing court. *United States v. Labeille–Soto,* 163 F.3d 93, 99 (2d Cir.1998); *see, e.g., Werber v. United States,* 149 F.3d 172, 179 (2d Cir.1998); *United States v. Pineyro,* 112 F.3d 43, 45 (2d Cir.1997).

 Similarly, the credit to be granted a defendant under § 3585(b) for time during which he was held in federal custody prior to sentencing is administered by the Bureau of Prisons. *See, e.g., United States v. Wilson,* 503 U.S. 329, 334–35, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992); *United States v. Labeille–Soto,* 163 F.3d at 99; *United States v. Whaley,* 148 F.3d 205, 206 (2d Cir.1998) (per curiam). Section "3585(b) does not authorize a district court to compute the credit at sentencing." *United States v. Wilson,* 503 U.S. at 334, 112 S.Ct. 1351; *see also United States v. Galicia–Delgado,* 130 F.3d 518, 522 (2d Cir.1997) (although the defendant may, after exhausting his administrative remedies, obtain judicial review of the Bureau of Prisons determination, the credit is " 'not [to be granted] by a district court at the time of sentencing' " (quoting *United States v. Keller,* 58 F.3d 884, 894 (2d Cir. 1995) (alteration ours))); *United States v. Pineyro,* 112 F.3d at 43. Accordingly, the district court properly declined Luna–Reynoso's request for a downward departure that would effect determinations that were beyond the court's authority to make.

## CONCLUSION

We have considered all of Luna–Reynoso's contentions on this appeal and have found them to be without merit. The judgment of the district court is affirmed.