**UNITED STATES, Plaintiff,**

v.

**Jose POLANCO, Defendant.**

**No. 93 Cr. 389 (WK).**

United States District Court, S.D. New York.

Nov. 24, 1993.

---

Maria A. Barton, Asst. U.S. Atty., New York City, for plaintiff.

Heriberto Cabrera, New York City, for defendant.

### AMENDED MEMORANDUM AND ORDER

WHITMAN KNAPP, Senior District Judge.

By a letter dated November 18, 1993, which has been made part of the record, the government moves pursuant to Fed.R.Cr.P. 35 that I correct the sentence heretofore imposed on the defendant as unjustified by law. That motion is denied except to reduce the term of imprisonment to be imposed in the event of defendant's unlawful return to the United States from fifteen years to one year.

Title 18 § 3561 (1985 & Supp.1993), so far as here relevant, provides:

(a) In general.—A defendant who has been found guilty of an offense may be sentenced to a term of probation unless—

(1) the offense is a Class A or Class B felony and the defendant is an individual; [or]

(2) the offense is an offense for which probation has been expressly precluded . . .

(b) Authorized terms.—The authorized terms of probation are—

(1) for a felony, not less than one nor more than five years . . .

Section 3563(b), so far as here relevant, provides:

(b) **Discretionary Conditions** [of Probation]—The court may provide, as further conditions of a sentence of probation, to the extent that such conditions are reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2), that the defendant—

(11) remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than *the lesser of one year* or the term of imprisonment authorized for the offense, during the first year of the term of probation . . .

18 U.S.C. § 3563(b) (emphasis added) (1985 & Supp.1993).

The sentence I have imposed—as amended—is, in effect, a sentence of probation with the specific condition that if "during the first year of the term of probation"[1] the defendant returns to the United States without

---

1. As explained at defendant's sentencing, his term of probation shall be suspended when he leaves the United States and thus is in effect perpetual.

appropriate permission he shall "remain in the custody of the Bureau of Prisons" for an interval of time "totaling no more than the lesser of one year or the term of imprisonment authorized for the offense."

■ The Guidelines, of course, would not countenance such a sentence. But for reasons stated on the record, I find the Guidelines to be inapplicable. Briefly to resummarize, the Guidelines speak of an "aggravated" felony. The felony in question was adjudicated by the Supreme Court of the State of New York, so in any rational system of justice one would look to that court to determine whether or not it was "aggravated." That court conclusively answered the question by imposing a sentence of six months when fifteen years were available to it.

■ I take judicial notice of a practice of the New York defense bar—with the acquiescence and sometimes active support of the judiciary—when dealing with a client with no criminal record who is accused of a minuscule narcotics offense and may have a valid but exceedingly-difficult-to-establish entrapment defense. In such circumstances the practice is to advise the client to forgo the defense and plead guilty in reliance on the widely accepted assumption that the judge will treat the matter as being as minuscule as it in fact is. This may not—in the abstract—appear to be the ideal administration of justice. However, it relieves the lawyer of the horror of advising a client to stand trial and then, failing to establish the defense, seeing him or her receive a life-destroying Rockefeller-law sentence.[2] *Compare North Carolina v. Alford* (1970) 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. Also, it permits the judiciary to get on with its business despite the unworkable situation with which the state legislature has confronted it.[3]

No rational system of justice would countenance permitting, let alone requiring, a plea of guilty entered under such circumstances automatically to transform a ten-month federal sentence into one of roughly five years. Being required to assume the authors of the Guidelines to be rational, I must conclude that they were unaware of the impact upon New York defendants of Application Note 7 to § 2L1.2 of the Sentencing Guidelines (1993), which effectively places all state narcotics convictions (including New York's) under the rubric, "aggravated felony." I therefore find, pursuant to 18 U.S.C. § 3553(b) (1985 & Supp.1993), that there exist circumstances of a kind "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

As indicated on the record, my purpose in pursuing this procedure was to find a way of assuring that the defendant will not again enter the United States without appropriate permission. As explained at defendant's sentencing on November 12, 1993, the alternative appeared to be the destruction of a human being at considerable cost to the taxpayers (according to the Pre-sentence Probation Report a total of approximately $104,000).

SO ORDERED.

---

2. Although defendant makes no point of it, careful examination of the probation report suggests that he might indeed have had a valid entrapment defense. Then twenty-six years of age, he had never been charged with, let alone convicted of, any crime or offense. Although subject to temptation because of a drug problem, he had apparently been able to meet his needs from his legitimate income as a taxi driver and apartment superintendent. He was lead into the "trap" by a friend in whom he had confidence who was acting, in effect, as a government agent. However, any responsible attorney would be reluctant to advise him to reject the possibility of a "slap on the wrist" and risk a jury verdict in the current hysterical atmosphere engendered by the "war on drugs."

3. An interesting illustration of this type of practice is found—in slightly different circumstances—in the experience of the present defendant's lawyer, Heriberto A. Cabrera, Esq., when dealing with the witness-tampering accusation. See Transcript of Sentencing, November 12, 1993, pp. 4–5.