UNITED STATES of America, Appellant,

v.

Israel AMAYA–BENITEZ,
Defendant–Appellee.

No. 1243, Docket 94–1489.

United States Court of Appeals,
Second Circuit.

Argued April 12, 1995.

Decided Nov. 8, 1995.

**1244**

George A. Yanthis, Assistant United States Attorney, Albany, NY (Thomas J. Maroney, United States Attorney for the Northern District of New York; Kimberly M. Zimmer, Assistant United States Attorney; Sara M. Lord, Assistant United States Attorney), for Appellant.

Kent J. Gebert, Schenectady, NY, for Defendant–Appellee.

Before: FEINBERG, WALKER, and CABRANES, Circuit Judges.

WALKER, Circuit Judge:

The principal issue presented in this case is whether a sentencing court may consider facts underlying a prior aggravated felony conviction that is the predicate for an enhanced sentence under U.S.S.G. § 2L1.2(b)(2). In the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *District Judge*), defendant-appellee Israel Amaya–Benitez was convicted under 8 U.S.C. § 1326(b) for illegally reentering the United States after being deported following a conviction for an aggravated felony. At sentencing, the district court increased the offense level by sixteen pursuant to U.S.S.G. § 2L1.2(b)(2), but departed downward on the basis that the prior conviction overrepresented Amaya–Benitez's criminal behavior. The government appeals on the grounds that the court erred in failing to state specific reasons for the departure and in examining facts underlying the aggravated felony conviction.

## BACKGROUND

In February 1983, Amaya–Benitez and two of his brothers abducted a young woman at gunpoint and raped her at knifepoint. The three were convicted of aggravated rape in Texas state court on May 31, 1983. Amaya–Benitez was sentenced to forty years imprisonment. On appeal, the convictions were reversed because there was conflicting alibi evidence and because all three defendants had been represented by the same counsel. *Amaya v. Texas*, 677 S.W.2d 159 (Tex.Ct. App.1984). Two years later, Amaya–Benitez pleaded nolo contendere to aggravated rape and received a sentence of five years imprisonment. Amaya–Benitez was released on parole, pursuant to Texas law, because he had served more than a quarter of his sentence.

In August 1985, Amaya–Benitez was deported to El Salvador. In November 1985, he illegally reentered the United States.

Within a year, after witnesses observed him and an accomplice slashing car tires, he was arrested in Washington, D.C. and charged in the District of Columbia Superior Court with possession of a deadly weapon. These charges were dropped in May 1987. Soon thereafter, Amaya–Benitez moved to Canada with his common-law wife and applied for political asylum. Once peace was restored in El Salvador, Amaya–Benitez was directed to leave Canada. On September 25, 1993, while en route to his native country and allegedly with no intent to stay in the United States, Amaya–Benitez once again illegally reentered the United States. When Border Patrol Agents discovered that Amaya–Benitez held an El Salvadoran passport, Amaya–Benitez admitted that he was an El Salvadoran citizen, that he had previously been deported from the United States, and that he was reentering the country illegally.

On October 6, 1993, a grand jury indicted Amaya–Benitez on two counts based upon his latest illegal reentry: (1) reentering the United States after being deported following a conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a) and (b), and (2) entering the United States at a time and place "other than as designated by Immigration Officers" and eluding examination and inspection by immigration officers, in violation of 8 U.S.C. § 1325(a). On April 5, 1994, the district court accepted Amaya–Benitez's plea of guilty to the first count.

At his sentencing hearing, Amaya–Benitez argued for a downward departure. He contended that the Immigration and Naturalization Service must have known of his first illegal reentry into the United States because of his 1986 arrest, yet it failed to prosecute him until the second illegal reentry. In the interim, however, the Sentencing Guidelines went into effect. Thus, he argued, he was subject to a harsher sentence by virtue of the delay in prosecution.

The government requested that Amaya–Benitez receive a full sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(2) because he had previously been convicted of a crime that constituted an aggravated felony. The district court expressed reservations as to the government's position because the rape conviction was eleven years old and Amaya–Benitez had served only two years in prison. Consequently, the court adjourned the sentencing to "take additional time to review those facts" and to determine whether the enhancement applied in this situation.

The records relating to Amaya–Benitez's rape conviction had been destroyed. Nevertheless, by talking to parties who had been involved in the appeal, the prosecutors and the probation office discovered and provided to the district court the following information: the rape victim had been convicted of prostitution, lewd dancing, and public intoxication; Amaya–Benitez's attorney thought that Amaya–Benitez would have been convicted on a lesser offense if he had been retried; the prosecutor, who did not remember the details of the case, thought Amaya–Benitez might have been offered a favorable disposition because the victim could not be located; and Amaya–Benitez's release from prison was in accord with Texas state law.

The sentencing hearing resumed one month later. Amaya–Benitez did not contest the application of the enhancement based on the aggravated felony. He did, however, reiterate his prior argument that by being prosecuted after the Guidelines were in effect, he faced a harsher penalty. The government continued to press for the full sixteen-level enhancement.

The district court concluded that the aggravated rape conviction constituted an aggravated felony and applied the sixteen-level enhancement requested by the government, increasing the offense level from five to twenty-one. The court then departed downward from twenty-one to eighteen reasoning that the aggravated felony presented "unique circumstances" because the rape conviction overrepresented Amaya–Benitez's past criminal behavior. The court went on to observe that

[t]he circumstances and the facts ... reflect a questionable basis for [defendant's] conviction, even though the conviction is a conviction. The questionable evidence present from that conviction and the fact that [defendant] pled and received time served when [his] conviction was initially reversed and remanded. So, in view of the

circumstances, ... I believe there is an overrepresentation of ... [defendant's] prior criminal behavior in that regard.

The court later reiterated its belief that Amaya–Benitez's "prior aggravated felony [did] not fairly represent [his] criminal behavior." Thus, Amaya–Benitez received a sentence of thirty months imprisonment, to be followed by two years of supervised release. The government appeals from the downward departure.

## DISCUSSION

■ The government challenges Amaya–Benitez's sentence on two grounds: 1) the district court did not state specific reasons for the downward departure as required by 18 U.S.C. § 3553(c)(2); and 2) in deciding to depart, the district court improperly reviewed the facts underlying Amaya–Benitez's aggravated rape conviction. We review a district court's determination that a factor warrants a downward departure de novo and review for clear error the court's conclusion that such a factor is present. *See United States v. Haynes*, 985 F.2d 65, 68 (2d Cir. 1993).

■ A court may depart from a guideline range when it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The Guidelines offer a list of factors that might warrant departure, *see* U.S.S.G. § 5K2.1–16, but district courts have discretion to consider additional factors, *see* U.S.S.G. § 5K2.0; *see also Haynes*, 985 F.2d at 68. In departing, however, the district court must state "the specific reason for the imposition of a sentence different from that described" by the Guidelines. 18 U.S.C. § 3553(c)(2); *see also United States v. Butler*, 954 F.2d 114, 121 (2d Cir.1992) ("Congress has expressed its intent, in no uncertain terms, that when a sentencing court departs from the applicable guideline range, that departure must be justified by *specific* reasons.").

The district court explained that it departed because "unique circumstances ... exist[ed] in factoring in the prior conviction of

an aggravated felony," "the prior aggravated felony conviction overrepresent[ed defendant's] past criminal behavior," there was "a questionable basis for [defendant's] conviction," and Amaya–Benitez's five year sentence "ended up being a two year sentence." We find these explanations too vague and general to constitute the sort of specific reasons that are required to justify a departure. For example, the district court never clarified why the conviction was questionable, or why the offense level mandated by the Guidelines "overrepresented" the seriousness of Amaya–Benitez's criminal history. Nor did the district court relate the circumstances upon which it was relying. We are therefore unable to determine whether they were "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

■ We conclude that the district court erred in failing to articulate in specific terms the reasons for its downward departure. While the district court offered no specific reason for departing from the guidelines, its explanation suggested that the departure was influenced by its perception that the rape conviction was accompanied by mitigating circumstances and by the fact that Amaya–Benitez had not served a full five years in prison. To the extent that it relied on such considerations, the district court erred as a matter of law.

In enacting 8 U.S.C. § 1326, Congress plainly intended to punish more severely those individuals who illegally reenter the country after having committed aggravated felonies than those who illegally reenter the country after having committed lesser crimes. *See* 8 U.S.C. § 1326(b). At the time of Amaya–Benitez's illegal reentry, the former were subject to a maximum penalty of fifteen years, while the latter were subject only to a maximum of two to five years. 8 U.S.C. § 1326 (1988). Section 2L1.2 of the Sentencing Guidelines mirrors this distinction: defendants convicted under 8 U.S.C. § 1326 for having previously committed an aggravated felony receive a sixteen-level enhancement, U.S.S.G. § 2L1.2(b)(2), while those who have committed lesser felonies

receive a four-level enhancement, U.S.S.G. § 2L1.2(b)(1).

An aggravated felony includes "any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years." U.S.S.G. § 2L1.2, Application Note 7. Congress defined a crime of violence as "an offense that has as an element the use, attempted use, or threatened use of physical force" or any other felonious offense "that, by its nature, involves a substantial risk that physical force . . . may be used in the course of committing the offense." 18 U.S.C. § 16(a) & (b). The parties agree that Amaya–Benitez's Texas offense was an aggravated felony.

▪ In addition, that Amaya–Benitez served fewer than five years of his sentence is an improper ground for departure. Application Note 7 of U.S.S.G. § 2L1.2(b)(2) states that "the term of imprisonment imposed," not the term served, is relevant in defining an aggravated felony. As a result, the fact that Amaya–Benitez served less than five years is simply irrelevant to the analysis; it is the five year term to which he was sentenced that is relevant.

▪ The government argues that the district court erred in looking behind the conviction to justify the downward departure. It asserts that "the sentencing court must look *only* to the statute under which the defendant was convicted to determine if the statute has as an ingredient the requisite use of force—and *not* to the facts underlying his conviction." While this precise issue is one of first impression in this circuit, our relevant caselaw and that of the Supreme Court supports the government's position.

In *United States v. Polanco*, 29 F.3d 35, 38 (2d Cir.1994), we reviewed the district court's determination that a U.S.S.G. § 2L1.2(b)(2) enhancement was inapplicable where the defendant had a prior state court drug conviction. The district court had taken judicial notice of the strategy of New York defense attorneys in encouraging low-level drug defendants to plead guilty in order to receive light sentences. The district court justified

its refusal to enhance the offense level upon its conclusion that the Sentencing Commission was unaware of this practice. *United States v. Polanco*, 838 F.Supp. 142, 144 (S.D.N.Y.1993). The district court, thus, effectively made a downward departure on the ground that this practice constituted a circumstance "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." *Id.* We vacated and remanded for resentencing because Polanco's conviction for the sale of five grams of cocaine was punishable under the Controlled Substances Act, 21 U.S.C. § 841(a)(1), and therefore constituted an "aggravated felony" under U.S.S.G. § 2L1.2(b)(2), "regardless of the quantity or nature of the contraband or the severity of the sentence imposed." *Polanco*, 29 F.3d at 38.

In *United States v. Abreu–Cabrera*, 64 F.3d 67 (2d Cir.1995), we addressed nearly the identical issue we face today, albeit in dicta. In that case, the district court sentenced Abreu–Cabrera after he pleaded guilty to illegally reentering the United States after deportation, in violation of 8 U.S.C. § 1326. Based on a prior conviction for possession of narcotics with intent to distribute, the court increased the offense level by sixteen, pursuant to U.S.S.G. § 2L1.2(b)(2). *Id.* at 70. Before entering judgment, though, and more than five months after orally delivering the initial sentence, the district court held another sentencing hearing to correct the sentence under Rule 35 of the Federal Rules of Criminal Procedure. The district court departed downward on the basis that the defendant's "conduct significantly differ[ed] from the norm" because he had "received a statutory minimum for a single cocaine offense for an undisclosed amount." *Id.* (quotations omitted). We reversed because the district court's resentence represented nothing more than a "change of heart" and therefore was "not a correction authorized by Rule 35(c)." *Id.* at 69, 72.

We did note however that, even if the court had had authority to resentence Abreu–Cabrera, the downward departure would have been inappropriate. *Id.* at 74–76. We observed that "the Sentencing Commis-

sion and Congress have shown themselves capable of modifying the definition of aggravated felony to exclude circumstances deemed less significant." *Id.* at 75 (citing U.S.S.G. § 2L1.2, Application Note 7; 8 U.S.C. § 1182(c); 8 U.S.C. § 1251(a)(2)(B)(i)). Relying for support on *Polanco,* as well as on the decisions of other circuits, we stated that the sixteen-level enhancement should apply "regardless of the underlying facts of Abreu–Cabrera's drug trafficking crime, and downward departure based on a perceived disparity between the sentence enhancement and those facts was improper." *Id.* at 76.

Other circuits have held that in determining whether a defendant's conviction constitutes an aggravated felony, "a court must look only to the statutory definition, not the underlying circumstances of the crime." *United States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993); *see also United States v. Lomas,* 30 F.3d 1191, 1193 (9th Cir.1994) ("To determine whether [a conviction] constitutes an aggravated felony, we look only at the statutory definition ... not the underlying factual circumstances of [the defendant's] crime."), *cert. denied,* —— U.S. ——, 115 S.Ct. 1158, 130 L.Ed.2d 1114 (1995); *United States v. Frias–Trujillo,* 9 F.3d 875, 877 (10th Cir.1993) (noting that there "is no indication that Congress intended that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case") (quotation omitted); *cf. United States v. Rodriguez,* 979 F.2d 138, 140–41 (8th Cir.1992) (stating that "[a] sentencing court is not required to consider the underlying circumstances at the time of the crime in determining that a defendant has been convicted of a 'crime of violence'").

Finally, two Supreme Court cases support the government's position. In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1989), the Court examined a similar issue in the context of 18 U.S.C. § 924(e), which provides a sentence enhancement for a defendant who is convicted of unlawful possession of a firearm and who has three prior convictions for certain types of offenses. The Court concluded that the statute "generally requires the trial court to look

only to the fact of conviction and the statutory definition of the prior offense," not to evidence underlying the conviction. *Id.* at 602, 110 S.Ct. at 2160 (footnote omitted). In *Custis v. United States,* —— U.S. ——, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), the Court bolstered the reasoning of *Taylor* by holding that 18 U.S.C. § 924(e) did not authorize "collateral attacks" such as challenges to the constitutionality of the convictions used for sentencing under § 924(e). *Id.* at ——, 114 S.Ct. at 1735.

The Court considered several factors in reaching these decisions. First, the language of 18 U.S.C. § 924(e) refers to a person convicted of the specified offenses, rather than a person who has committed the offense. Second, the Court concluded that the legislative history suggests that § 924(e) was intended to apply to every case involving particular crimes, *Taylor,* 495 U.S. at 601, 110 S.Ct. at 2159, particularly given the lack of express authorization to attack prior convictions collaterally, *Custis,* —— U.S. at ——, 114 S.Ct. at 1735. Third, the Court was concerned about the "practical difficulties and potential unfairness" that would result in essentially rehearing the prior case if the court looked to the facts underlying the conviction. *Taylor,* 495 U.S. at 601, 110 S.Ct. at 2159; *see Custis,* —— U.S. at —— –——, 114 S.Ct. at 1738–39. Finally, the Court pointed to the interest in promoting the finality of judgments, which "bear[s] extra weight in cases in which the prior convictions ... are based on guilty pleas, because when a guilty plea is at issue, 'the concern with finality served by the limitation on collateral attack has special force.'" *Custis,* —— U.S. at ——, 114 S.Ct. at 1739 (quoting *United States v. Timmreck,* 441 U.S 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979)).

 The Court's reasoning is easily applied to this case. Like 18 U.S.C. § 924(e), 8 U.S.C. § 1326 concerns only a conviction, rather than a commission, of an aggravated felony. Moreover, nothing in the statute expressly permits sentencing courts to review prior convictions. Finally, because Amaya–Benitez's conviction resulted from a plea of nolo contendere, there is an interest in the finality of the judgment. Thus, based on the

reasoning of the Supreme Court and this circuit, a court may not look to the facts underlying a predicate conviction to justify a departure from a guideline-imposed sentence on the basis of mitigating or aggravating circumstances surrounding such conviction. Of course, as the Supreme Court indicated in *Taylor*, where the defendant is convicted under a multifaceted statute that in some cases constitutes an aggravated felony and in other cases does not, the district court may look to the indictment and jury charge to ascertain whether the defendant's conviction encompassed the elements of an aggravated felony. 495 U.S. at 602, 110 S.Ct. at 2160. But once the district court has made that determination, it may inquire no further.

■ Amaya–Benitez asserts further that the downward departure should be upheld because, in waiting to prosecute Amaya–Benitez until his second illegal reentry, the government subjected him to harsher penalties, as U.S.S.G. § 2L2.12 had not been promulgated at the time of his first illegal reentry. We can readily dispose of this argument. The district court never offered this as a reason for its downward departure. In fact, the district court stated that it was "not sure that [Amaya–Benitez's] reason [provided] . . . a solid basis for consideration of a downward departure" and that Amaya–Benitez's "argument is not going to fly at all." Since Amaya–Benitez's argument provided no basis for the court's departure, we need not consider it further, although we note that it is without merit. The government was not required to prosecute the defendant on his first reentry and in forgoing prosecution at that time, the government could not have anticipated either a second reentry or that the penalties for reentry would be enhanced in the interim.

■ We also briefly address Amaya–Benitez's suggestion that the downward departure was appropriate because the felony was "ancient." The rape conviction occurred in 1985 and the sentencing for the illegal reentry followed nine years later. In *United States v. Maul–Valverde*, 10 F.3d 544 (8th Cir.1993), the Eighth Circuit concluded that a downward departure from an enhancement under U.S.S.G. § 2L1.2(b)(2) was improper where the aggravated felony conviction was

fourteen years old. Without deciding whether an underlying conviction is ever so "ancient" as to warrant a downward departure, we note that this nine year old conviction certainly was not.

## CONCLUSION

Because the district court departed from the guidelines range without offering specific reasons, we vacate the sentence and remand with instructions to resentence in accordance with this opinion. We emphasize that the district court may not consider the circumstances underlying the rape conviction in resentencing the defendant.