**UNITED STATES of America, Appellee,**

v.

**Juan GALICIA–DELGADO, aka Juan Delgado, Defendant–Appellant.**

**No. 339, Docket 97–1125.**

United States Court of Appeals, Second Circuit.

Submitted Oct. 19, 1997.

Decided Dec. 2, 1997.

Thomas J. Maroney, United States Attorney for the Northern District of New York, Albany, NY (Thomas Spina, Jr., Assistant United States Attorney, Albany, NY, of counsel), for Appellee.

James E. Long, Albany, NY, for Defendant–Appellant.

Before: KEARSE and CABRANES, Circuit Judges, and COTE, District Judge *.

KEARSE, Circuit Judge.

Defendant Juan Galicia–Delgado ("Delgado") appeals from a judgment entered in the United States District Court for the Northern District of New York following his plea of guilty before Lawrence E. Kahn, *Judge,* convicting him of reentering the United States without permission after having been deported, in violation of 8 U.S.C. § 1326(b)(2), and sentencing him principally to 46 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, Delgado contends principally that the district court misapplied the Sentencing Guidelines ("Guidelines") in enhancing his sentence on the basis that he had been convicted of an aggravated felony prior to his deportation. For the reasons that follow, we affirm the judgment.

* Honorable Denise Cote, of the United States District Court for the Southern District of New York,

## I. BACKGROUND

Delgado, a Mexican national, has twice unlawfully entered the United States and after each such entry has been arrested for attempted robbery. This appeal arises from his second entry into this country. The pertinent facts are not in dispute.

Delgado first unlawfully entered the United States from Mexico near San Ysidro, California, in 1988. In December 1990, he mugged a 65–year–old woman in Queens County, New York; he knocked her to the ground, breaking her shoulder, hip, and wrist, and then took her handbag and ran from the scene. An eyewitness to the mugging gave chase and succeeded in catching Delgado and holding him until the police arrived.

Delgado was arrested and was prosecuted in New York State ("State") court on one count of attempted robbery in the first degree. He pleaded guilty in March 1991 and was sentenced to an indeterminate prison term of 30–90 months. On May 28, 1993, just shy of 30 months after his arrest, the State released Delgado on parole. On July 7, 1993, he was deported to Mexico.

Two days later, Delgado unlawfully reentered the United States near Brownsville, Texas; from there he returned to New York. He later explained that he liked the lifestyle in New York too much to wait until he could return lawfully. On July 24, 1995, the police in Queens once again arrested Delgado for, *inter alia,* attempted robbery. He was not prosecuted for that offense, however. Instead, the State revoked his parole and required him to serve an additional 14 months of the sentence imposed for his 1991 conviction. After the completion of that period, in September 1996, the State again released Delgado on parole.

Upon his release, Delgado was arrested by federal authorities. He was indicted on one count of returning to the United States after deportation without the permission of the Attorney General, in violation of 8 U.S.C. § 1326(b)(2), and he pleaded guilty to that

sitting by designation.

charge. Under the Guidelines, the base offense level for that offense is eight. Over Delgado's objection, the district court enhanced his offense level by 16 steps pursuant to Guidelines § 2L1.2(b)(2) on the ground that Delgado had been deported after being convicted of an aggravated felony. Delgado was sentenced as indicated above, and this appeal, permitted by the plea agreement, followed.

## II. DISCUSSION

On appeal, Delgado contends principally that his 1991 conviction for attempted robbery did not meet the Guidelines definition of a conviction for an aggravated felony. He also contends that the court should have granted him a "sentence credit" for the time he had spent in state custody after violating parole, and should have granted his motions for downward departure pursuant to Guidelines §§ 4A1.3 and 5K2.0. This last contention is not properly before us, as Delgado does not argue that the denials of his departure motions were based on either an error of law or the court's misapprehension of its power to depart. Accordingly, those denials are not appealable. Delgado's other contentions, discussed below, are unpersuasive.

A. *The "Aggravated Felony" Enhancement*

The Guidelines provide that the offense level of a defendant convicted of unlawfully entering the United States is to be enhanced by 16 steps "[i]f the defendant previously was deported after a conviction for an aggravated felony." Guidelines § 2L1.2(b)(2). For purposes of this section, the term "aggravated felony" includes

> any crime of violence (as defined in 18 U.S.C. § 16, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least five years; or any attempt ... to commit any such act[,] ... whether in violation of federal or state law.

Guidelines § 2L1.2 Application Note 7. Determining whether an offense was an aggravated felony thus involves two basic questions: (1) whether the offense was a crime of violence as defined in 18 U.S.C. § 16, and (2)

whether the prison term imposed was at least five years.

■■■ The first is not in dispute here. As defined in 18 U.S.C. § 16, a "crime of violence" includes "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a) (1994). The nature of the prior offense of conviction is controlled by the statutory definition of the offense, *see, e.g., United States v. Amaya–Benitez,* 69 F.3d 1243, 1248–49 (2d Cir.1995), and under the New York definition, one element of first-degree robbery is "forcibly" stealing property, N.Y. Penal Law § 160.15; *see also id.* § 160.00 ("forcibly" stealing involves "us[ing] or threaten[ing] the immediate use of physical force upon another person"). The crime of which Delgado was convicted in 1991—attempted robbery in the first degree—thus plainly has the attempted-use-of-force element needed to come within the scope of 18 U.S.C. § 16.

■■■ The second, and disputed, question is the narrow one of whether an indeterminate sentence imposing a maximum of five or more years, but a minimum below five years, constitutes a sentence of "at least five years" within the meaning of § 2L1.2 Application Note 7. Although indeterminate sentences are not mentioned in the § 2L1.2 commentary, we conclude for several reasons that this question should be answered in the affirmative.

First, in generally addressing the matter of what constitutes a sentence of "at least five years," we have held that the court must look to " 'the term of imprisonment imposed,' not the time served." *United States v. Amaya–Benitez,* 69 F.3d at 1247 (quoting Guidelines § 2L1.2 Application Note 7). "[T]he fact that [a defendant] served less than five years is simply irrelevant to the analysis." *Id.* Second, for more than a century, sentences for variable or unspecified periods have been treated as sentences for the maximum period specified or, if unspecified, the maximum permissible under the pertinent penal statute. Thus, in 1930, we noted, discussing cases dating as far back as 1896, that "[i]ndeterminate sentences have long been

held sentences for the maximum term for which the defendant might be imprisoned." *United States ex rel. Paladino v. Commissioner of Immigration,* 43 F.2d 821, 822 (2d Cir.1930); *see also Baughman v. United States,* 450 F.2d 1217, 1220 (8th Cir.1971), *cert. denied,* 406 U.S. 923, 92 S.Ct. 1791, 32 L.Ed.2d 123 (1972); *United States ex rel. Dentico v. Esperdy,* 280 F.2d 71, 72 n. 1 (2d Cir.1960); *Story v. Rives,* 97 F.2d 182, 187 (D.C.Cir.) ("An indeterminate sentence is one for the maximum period imposed . . . ."), *cert. denied,* 305 U.S. 595, 59 S.Ct. 71, 83 L.Ed. 377 (1938); *People v. Washington,* 264 N.Y. 335, 338, 191 N.E. 7 (1934) ("An indeterminate sentence is regarded as a sentence for the maximum term prescribed."); Black's Law Dictionary 771 (6th ed.1990) (defining "[i]ndeterminate sentence" as a "sentence to imprisonment for the maximum period defined by law, subject to termination . . . at any time after service of the minimum period"). In *United States ex rel. Paladino v. Commissioner of Immigration,* we interpreted a statutory provision that authorized the deportation of certain aliens who had been sentenced more than once to a prison term of "one year or more." 43 F.2d at 821 (internal quotation marks omitted). Paladino had twice been convicted of theft offenses in the New York courts. For his first crime, he served nearly 15 months. For his second crime, which carried a maximum prison term of 20 years, he received an indeterminate sentence with no stated term, and he served only nine months. Relying on the "great weight of authority," we concluded that for purposes of the deportation statute, Paladino's indeterminate sentence with no stated maximum should be treated as a sentence to the maximum term authorized by the state's penal statute. *Id.* at 823. Because the penal statute authorized a maximum prison term of 20 years, we concluded that he had been sentenced to "one year or more" and was thus subject to deportation. *See id.*

Further, in the criminal history part of the Guidelines, indeterminate sentences are treated in a way that reflects this traditional interpretation. Under § 4A1.1, a defendant receives a specified number of criminal history points for any prior "sentence of imprisonment," with the length of the prior sentence determining the number of points to be added. "The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed." Guidelines § 4A1.2(b)(1). When a defendant has been sentenced to an indeterminate term, "the length of [his] sentence of imprisonment is the stated maximum (*e.g.,* . . . in the case of an indeterminate sentence of one to five years, the stated maximum is five years . . . )." *Id.* § 4A1.2 Application Note 2.

The phrases "the length of a sentence of imprisonment" in § 4A1.2 Application Note 2 and "a term of imprisonment [of] at least five years" in § 2L1.2 Application Note 7, differ not in kind but rather in level of generality. We can see no logical reason to give indeterminate sentences inconsistent interpretations with respect to these two provisions. We think that if the Sentencing Commission had meant indeterminate sentences to be treated, for purposes of § 2L1.2(b)(2), differently from their treatment in § 4A1.2 and differently from their traditional treatment, it would doubtless have so stated.

We note that the definitions found in § 4A1.2 have often been borrowed to interpret terms in § 2L1.2. *See, e.g., United States v. Cuevas,* 75 F.3d 778, 782 & n. 10 (1st Cir.1996) (relying on § 4A1.2 to interpret § 2L1.2's use of the word "conviction"); *United States v. Diaz–Bonilla,* 65 F.3d 875, 877 (10th Cir.1995) (relying on § 4A1.2 to interpret § 2L1.2's use of the word "felony"); *see also United States v. Olvera–Cervantes,* 960 F.2d 101, 103–04 (9th Cir.1992) (relying on § 4A1.1 to interpret § 2L1.2's use of the word "felony"). Indeed, our Sister Circuits that have considered the proper interpretation of indeterminate sentences in the context of § 2L1.2(b)(2)'s enhancement for conviction of an aggravated felony have reached the same conclusion we reach here. *See United States v. Cordova–Beraud,* 90 F.3d 215, 218–20 (7th Cir.1996) (upholding § 2L1.2(b)(2) enhancement on the ground that, in light of § 4A1.2's definition of "sentence of imprisonment," an indeterminate sentence of 2–10 years constituted a sentence of "at least five years"); *United States v. Quinonez–Terrazas,* 86 F.3d 382, 383 (5th Cir.1996) (upholding § 2L1.2(b)(2) enhance-

ment on the ground that, in light of § 4A1.2's definition of "sentence of imprisonment" and the "common law definition" of an indeterminate sentence, a sentence of 4–10 years constituted a sentence of at least five years); *see also Nguyen v. INS*, 53 F.3d 310, 311 (10th Cir.1995) (affirming agency determination that a sentence of 3–8 years constituted a sentence of at least five years for purposes of 8 U.S.C. § 1101(a)(43)).

For these reasons, we conclude that Delgado's sentence of 30–90 months' imprisonment (*i.e.,* 2½–7½ years) constitutes a sentence of "at least five years" and that his 1991 conviction for attempted robbery was therefore a conviction for an "aggravated felony." The district court's enhancement of his offense level pursuant to § 2L1.2(b)(2) was proper.

#### B. *Sentencing Credit*

Delgado also argues, relying on 18 U.S.C. § 3585(b) (1994) and Guidelines § 5G1.3(b), that he should have been given a sentence credit for the 14 months he spent in state custody following his return to the United States. His arguments are meritless.

■ Under § 3585(b), a defendant is to be given credit toward his sentence for

any time he has spent in official detention prior to the date the sentence commences—

(1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b). Delgado's reliance on this section is misplaced for two reasons. First, the credit envisioned by this section "is granted by the Attorney General through the Bureau of Prisons after a defendant is sentenced, not by a district court at the time of sentencing." *United States v. Keller,* 58 F.3d 884, 894 (2d Cir.1995); *see generally United States v. Wilson,* 503 U.S. 329, 334, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992) ("§ 3585(b) does not authorize a district court to compute the credit at sentencing").

■ Second, even if this were an attempt to obtain review of a denial of such credit by the Bureau of Prisons, *see, e.g., United States v. Keller,* 58 F.3d at 894 ("To obtain sentencing credit under § 3585 a federal prisoner must first exhaust his administrative remedies before seeking judicial relief."), it would properly be rejected. Section 3585(b) is inapplicable to Delgado because the time he spent in state custody after violating his parole was part of his sentence for the 1991 attempted robbery conviction; that robbery was not the offense for which sentence was imposed here, which was his 1993 unlawful reentry into the United States.

■ Nor is there merit in Delgado's argument that the time he spent in state custody from July 1995 to September 1996 for his parole violation warranted a sentence credit under Guidelines § 5G1.3(b). That section provides that in certain circumstances, "the sentence for the instant offense shall be imposed to run concurrently to [an] undischarged term of imprisonment." Guidelines § 5G1.3(b). Assuming *arguendo* that this provision on its face applied to Delgado, it would afford him no basis for relief, for he would fall within the exception spelled out in the commentary that "the sentence for the instant offense should be imposed to run consecutively to [a] term imposed for [a] violation of ... parole ... in order to provide an incremental penalty" for the parole violation. Guidelines § 5G1.3 Application Note 6.

### CONCLUSION

We have considered all of Delgado's contentions that are properly before us and have found them to be without merit. The judgment of conviction is affirmed.