UNITED STATES of America,
Appellee,

v.

Juan Luis ROMERO–TAMAYO,
Defendant–Appellant.

Docket No. 99–1375

United States Court of Appeals,
Second Circuit.

Argued: Jan. 6, 2000

Decided: May 22, 2000

Gretchen L. Wylegala, Assistant United States Attorney, Buffalo, New York (Denise E. O'Donnell, United States Attorney for the Western District of New York, Buffalo, New York, on the brief), for Appellee.

Kimberly A. Schechter, Buffalo, New York (Federal Public Defender's Office, Buffalo, New York, on the brief), for Defendant-Appellant.

Before: KEARSE, WALKER, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Juan Luis Romero–Tamayo appeals from a judgment entered in the United States District Court for the Western District of New York following his plea of guilty before Richard J. Arcara, *Judge*, convicting him, as an alien previously deported after conviction of an aggravated felony, of reentering the United States without the permission of the United States Attorney General, in violation of 8 U.S.C. § 1326 (Supp. III 1997). Romero–Tamayo was sentenced principally to 47 months' imprisonment, to be followed by a three-year term of supervised release. On appeal, he contends that the district court impermissibly rejected a plea agreement that would have limited his term of imprisonment to 24 months. Finding no merit in his contention, we affirm.

## I. BACKGROUND

The facts are not in dispute. Romero–Tamayo, a citizen of Mexico, was deported from the United States in 1995 following his conviction of an aggravated felony. In 1998, he was found in the United States, having reentered the country without the permission of the United States Attorney General.

Section 1326(a) of Title 8 provides that, "[s]ubject to subsection (b)," a deported

alien convicted of reentering the United States without permission of the Attorney General may be imprisoned not more than two years. 8 U.S.C. § 1326(a). Subsection (b), however, provides that "[n]otwithstanding subsection (a)," an unlawfully reentering alien whose deportation followed his conviction of an aggravated felony may be imprisoned for up to 20 years. 8 U.S.C. § 1326(b)(2). Romero–Tamayo and the government entered into a plea agreement dated October 19, 1998 ("First Plea Agreement"), in which Romero–Tamayo agreed to waive indictment and to plead guilty to a one-count information charging him with a violation of 8 U.S.C. § 1326(a). The first paragraph of that agreement stated that a violation of § 1326(a) "carries a maximum possible sentence of a term of imprisonment of 2 years, a fine of $250,000, or both, a mandatory $100.00 special assessment and a term of supervised release of up to 1 year." (First Plea Agreement ¶ 1.) It also stated that "the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing." (*Id.*)

After setting out the factual basis for the plea, calculating Romero–Tamayo's offense level and criminal history category under the Sentencing Guidelines ("Guidelines"), and making an adjustment for acceptance of responsibility, the First Plea Agreement stated as follows:

> It is the understanding of the government and the defendant that, with a total offense level of 21 and criminal history category of III, the defendant's sentencing range [under the Guidelines] would be a term of imprisonment of 46 to 57 months, a fine of $7,500 to $75,000, and a period of supervised release of up to 1 year. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

(First Plea Agreement ¶ 11.) At the plea hearing, the district court accepted Rome-ro–Tamayo's plea of guilty but raised questions about the agreement's purported ceiling on the prison term that could be imposed.

The presentence report ("PSR") prepared on Romero–Tamayo thereafter cast doubt on the validity of the agreement's 24–month ceiling:

> The defendant re-entered the United States after having previously been convicted of an aggravated felony. This is in violation of [ ]8 U.S.C. § 1326(b)(2) which has a 20 year statutory maximum term of imprisonment. As a result, if convicted under that statute, the guideline imprisonment range of 46 to 57 months would be applicable.

(PSR ¶ 41.) Although Romero–Tamayo was purportedly charged only under subsection (a) of § 1326, the PSR pointed out that the Supreme Court had recently ruled in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), that 8 U.S.C. §§ 1326(a) and (b) do not define separate offenses; rather § 1326(b) merely sets out enhanced penalties for certain categories of defendants have who engaged in the conduct described in § 1326(a). The PSR concluded that, "[a]s a result, the Court in this situation[ ] could determine that the statutory maximum is 20 years and not 2 years and sentence the defendant within the guideline range of 46 to 57 months." (PSR ¶ 41.)

Both sides objected to this portion of the PSR. Romero–Tamayo argued that the district court could not

> legally sentence Juan Romero–Tamayo to more than two years, since that is the maximum sentence authorized for a violation of 8 U.S.C. § 1326(a), the specific offense to which Mr. Romero–Tamayo entered his plea of guilty.

(Objections and Statement of Defendant With Respect to Sentencing Factors at 3.) The government endorsed that view:

> The defendant in this case pled before this Court to a violation of 8 U.S.C.

§ 1326(*a* ) (emphasis added). The statutory maximum, as specifically set forth under Title 8, U.S.C. Section 1326(a), is two years imprisonment. Therefore, it is the government's position that the maximum term of imprisonment imposable on the defendant in this case is two years.

(Statement of the Government With Respect to Sentencing Factors at 1.) The district court requested additional briefing.

Romero–Tamayo submitted a memorandum arguing that *Almendarez–Torres* was not controlling. He pointed out that in that case the defendant had been charged under § 1326 generally, whereas Romero–Tamayo had been charged only under § 1326(a) and had pleaded guilty only under that subsection. In two memoranda dated February 5, 1999, one of which was denominated a Reply, the government agreed. It argued that the Supreme Court's decision in *Almendarez–Torres* "did *not* consider the question whether a defendant who had been indicted for, or who desired to plead guilty solely for a violation of Section 1326*(a)* could be sentenced to more than the two year maximum sentence set forth in such section." (Sentencing Memorandum of the United States dated February 5, 1999 ("Government's Memorandum I"), at 8 (emphases in original).) The government argued that it "has the authority to determine what charges to bring against a person and what the terms of a plea agreement will be" and stated that

> [i]t ha[d] long been the policy of the United States Attorney for the Western District of New York to permit a reentry after deportation defendant who has a criminal history category of III or less to plead to Section 1326 with a two year cap unless the defendant has a history of violent offenses or there are other aggravating circumstances in the case.

(Government's Memorandum I, at 6; *see id.* at 7 (policy "to permit a plea solely to Section 1326(a)").) Explaining its reasons

for the policy, which included litigation-cost savings for the government and mitigating factors that favored individual defendants, the government contended that entering into an agreement to cap the defendant's sentence at 24 months, subject to court approval, was a charging practice well within the proper bounds of prosecutorial discretion. The government stated that the district courts

> have the authority and discretion either to accept or reject plea agreements which limit defendants' sentencing exposure to two years incarceration in cases where the plea is to a violation solely of Section 1326(a). There is no case which requires that Section 1326(b) be applied to such pleas.

(Reply Sentencing Memorandum of the United States dated February 5, 1999, at 4–5.)

In a written opinion dated February 26, 1999, reported at 40 F.Supp.2d 142, the district court rejected the parties' view of § 1326 as a bifurcated prohibition, concluding that that view was contrary to both the plain language of the statute and the Supreme Court's decision in *Almendarez–Torres*. The district court stated that in that decision,

> the Court held that § 1326(b)(2) is merely a penalty provision and does not serve to define a separate immigration-related offense. Thus, a defendant who was deported after conviction of an aggravated felony is subject to the 20–year maximum sentence under § 1326(b)(2), even if the indictment or information does not charge or mention § 1326(b)(2).

40 F.Supp.2d at 145. The court reasoned that, notwithstanding the government's policy reasons for seeking prompt disposition of reentry-after-deportation cases by way of its bifurcated–1326 practice, the statute did not grant either the United States Attorney or the court the discretion to ignore an integral part of the statute and, in effect, fix a maximum prison term lower than that set by Congress:

The United States Attorney's policy, no matter how well intentioned, is contrary to law as it relies on discretion not provided for in the statute. If a § 1326 defendant was previously deported after conviction for an aggravated felony, application of the 20–year maximum in § 1326(b)(2) is automatic. "In enacting 8 U.S.C. § 1326, Congress plainly intended to punish more severely those individuals who illegally reenter the country after having committed aggravated felonies than those who illegally reenter the country after having committed lesser crimes." *United States v. Amaya–Benitez*, 69 F.3d 1243, 1246 (2d Cir.1995) (citing 8 U.S.C. § 1326(b)). What the government and the defendant are trying to do in this case is to use creative pleading to get around the plain language of the statute and the intent of Congress. *While the United States Attorney may have the discretion to determine whether or not to charge an individual with a particular crime, once the decision is made to charge a defendant with violating § 1326 or § 1326(a), the defendant is automatically subject to the sentencing enhancements in § 1326(b), if applicable; there is no discretion left to either the United States Attorney or to the Court.*

40 F.Supp.2d at 145 (emphasis added).

The district court also concluded that acceptance of the plea agreement would be contrary to the purpose of the Guidelines because it would result in an unwarranted sentencing disparity vis-à-vis other illegally reentering previously-deported-aggravated-felons charged under § 1326. Noting the parties' agreement that the Guidelines range applicable to Romero–Tamayo was 46–57 months, the court stated that

if the Court were to accept the parties' position, defendant's sentence in this case would be only 24 months. *See* U.S.S.G. § 5G1.1(a). By contrast, an identically-situated defendant who is convicted in a district where the local United States Attorney follows the language of the statute would face a minimum sentence under the U.S.S.G. of 46 months, nearly twice the amount of time faced by the defendant in this case. Such a disparate result is exactly what the U.S.S.G. were designed to eliminate. Sentences of similarly-situated defendants should not vary according to the district in which they are convicted.

If the United States Attorney or the Department of Justice believes that the sentencing enhancements in § 1326(b) and U.S.S.G. § 2L1.2(b)(1)(A) are too harsh, or that there are other practical or policy reasons for not applying such enhancements in all cases, then the United States Attorney or the Department of Justice should lobby Congress to change the statute. Until the law is changed, however, the Court must apply it as written.

40 F.Supp.2d at 146.

The district court accordingly rejected the First Plea Agreement, finding that it was "contrary to law and ... therefore invalid," and vacated Romero–Tamayo's plea of guilty. *Id.* at 147. Thereafter, an indictment was handed down charging Romero–Tamayo with one count of unlawfully reentering the United States in violation of § 1326(a). On May 11, 1999, Romero–Tamayo and the government entered into a new plea agreement ("Second Plea Agreement"), differing from the First Plea Agreement in two principal respects. First, it stated that a § 1326(a) offense "carries a maximum possible sentence of a term of imprisonment of *20* years ... and a term of supervised release of at least 2, and up to 3 years." (Second Plea Agreement ¶ 1 (emphasis added).) Second, it provided that Romero–Tamayo reserved the right to appeal the district court's rejection of the First Plea Agreement with its two-year cap on imprisonment.

The Second Plea Agreement was accepted by the court. Romero–Tamayo was sentenced principally to a prison term of 47 months. This appeal followed.

## II. DISCUSSION

On appeal, Romero–Tamayo pursues his contention that the government should have the discretion to offer plea agreements that limit to 24 months the maximum prison term that the district court may impose for violation of § 1326 by an alien deported after being convicted of an aggravated felony, and that the district court's ruling was not compelled by either *Almendarez–Torres* or the language of the statute. The government has changed its position and now contends that the decision of the district court was correct. For the reasons that follow, we agree with the ruling and reasoning of the district court.

To the extent pertinent to the present case, § 1326 provides as follows:

**(a) In general**

*Subject to subsection (b)* of this section, any alien who—

(1) has been ... deported[ ] or removed ... and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless ... prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission ...,

shall be fined under title 18, or *imprisoned not more than 2 years*, or both.

**(b) Criminal penalties for reentry of certain removed aliens**

*Notwithstanding subsection (a)* of this section, in the case of any alien described in such subsection—

. . . . .

(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, *imprisoned not more than 20 years*, or both....

8 U.S.C. §§ 1326(a), (b)(2) (emphases added).

In *Almendarez–Torres*, the Supreme Court confronted the question of whether § 1326(b)'s provision for imprisonment of up to "20 years for 'any alien described' in subsection (a), if the initial 'deportation was subsequent to a conviction for commission of an aggravated felony[,]' ... defines a separate crime or simply authorizes an enhanced penalty." 523 U.S. at 226, 118 S.Ct. 1219. The Court ruled that subsection (b) does not define a separate crime; rather, "the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist." *Id.*

We see no merit in the attempt to distinguish *Almendarez–Torres* on the basis that the charge lodged against Romero–Tamayo, unlike that lodged against Almendarez–Torres, cited only subsection (a) of § 1326. Section 1326(a) itself, which states that it is "[s]ubject to subsection (b)," makes the provisions of subsection (b) applicable whether or not the charging instrument makes reference to (b). *Cf. United States v. Avila–Ramirez*, 170 F.3d 277, 279 (2d Cir.1999) (per curiam) ("sentencing court is ... required to increase a defendant's sentence if he or she has been convicted of a prior aggravated felony, whether or not the indictment mentions that conviction").

Congress's intent that more severe penalties be imposed on § 1326 defendants who are previously-deported-aggravated-felons is revealed in the evolution of that section and is implemented in the guideline governing § 1326 offenses. As discussed in greater detail in *United States v. Bonnet–Grullon*, 212 F.3d 692 (2d Cir.2000), § 1326 originally did not distinguish among illegally reentering aliens in terms of their criminal history; it set a maximum prison term of two years for any person convicted under the section. In 1988, in response to the "growing problem of felonious aliens," 133 Cong. Rec. 28841 (Oct. 22, 1987), the section was amended to increase to 15 years the maximum prison

term for an illegally reentering alien whose deportation had been preceded by conviction of an aggravated felony; in 1994 that maximum was further increased to 20 years.

The guideline applicable to a defendant convicted of violating § 1326 is 2L1.2. The original version of that guideline, promulgated at a time when the maximum prison term for any person violating § 1326 was 24 months, prescribed an offense level of no more than eight. *See* Guidelines § 2L1.2 (1987). After the statutory penalties were first increased in 1988, § 2L1.2 was amended to increase the prescribed Guidelines range. The 1989 version specified a four-step increase in offense level if the § 1326 defendant had been previously deported following conviction of any felony; it made no specific provision for an additional increase if that prior felony was an aggravated felony, expressly leaving that possibility to the discretion of the district court by way of departure. *See* Guidelines § 2L1.2 & Application Note 3 (1989). In 1991, however, § 2L1.2 was further amended to provide, as it does currently, that the base offense level for a § 1326 defendant is eight, and that if his deportation followed his conviction of an aggravated felony, his offense level must be increased by 16 steps. The explanation for the 1991 change was that

> [p]reviously, such cases were addressed by a recommendation for consideration of an upward departure.... The Commission has determined that th[is] increased offense level[ is] appropriate to reflect the serious nature of th[is] offense[ ].

Guidelines App. C, amend. 375 (Nov. 1, 1991).

Thus, under § 2L1.2, the offense level of an illegally reentering previously-deported-aggravated-felon must be increased from 8 to 24. Under the Guidelines grid, the minimum prison term for a defendant having a total offense level of 24 is 51 months. Romero–Tamayo's total offense level, after adjustment for acceptance of responsibility, was 21, which, in light of his criminal history, subjected him to a minimum of 46 months—considerably below the statutory maximum of 20 years set by § 1326, but nearly double the 24-month term the parties attempted to impose as a ceiling.

In sum, the First Plea Agreement purported to set Romero–Tamayo's maximum prison term below the maximum set by Congress and to bar the court from applying the applicable guideline. No tenable basis having been proffered for a sentence outside the applicable guideline range, we see no error in the district court's refusal to accept the First Plea Agreement, and we affirm substantially for the reasons stated in Judge Arcara's opinion.

## CONCLUSION

We have considered all of Romero–Tamayo's arguments on this appeal and have found them to be without merit. The judgment of conviction is affirmed.